# Exhibit 1

## INDEPENDENT CONTRACTOR AGREEMENT

This INDEPENDENT CONTRACTOR AGREEMENT (this "Agreement") is made and entered into as of November 1, 2013, between Eagan Avenatti LLP (the "Company"), on the one hand, and Jason Frank, individually, and Jason Frank Law, a Professional Law Corporation (collectively the "Independent Contractor") on the other hand.

WHEREAS, the Company desires to retain the services of the Independent Contractor as senior counsel;

WHEREAS, the Independent Contractor has expertise in the field of litigation;

WHEREAS, the parties acknowledge that the Independent Contractor's abilities and services are unique and essential to the prospects of the Company; and

WHEREAS, the Company and the Independent Contractor desire to enter into this Agreement to set forth the terms and conditions of the relationship between the Company and the Independent Contractor.

NOW, THEREFORE, in consideration of the mutual covenants and agreements contained herein, and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties, intending to be legally bound, agree as follows:

1.      Effective Date; Term.  The effective date ("Effective Date") of this Agreement shall be the date hereof. The Independent Contractor's term of service (the "Service Term") under this Agreement shall commence on the Effective Date and shall continue until December 31, 2016 (the "Term Date"), subject to the provisions in Section 4 of this Agreement regarding earlier termination.  If at the Term Date, the Independent Contractor's service has not been terminated previously, this Agreement shall automatically renew for consecutive one-year terms, upon the same terms and conditions, unless the Independent Contractor or Company, and no later than 30 days prior to the expiration of the Service Term (including any renewal thereof), provides written notice to the other party that the Service Term shall not renew.

2.      Duties. The Independent Contractor shall perform all duties incident to the position of senior counsel of the Company.  The Independent Contractor agrees to abide by all the Company policies, practices, procedures or rules that are provided to the Independent Contractor, including but not limited to the requirement that the Independent Contractor refrain from competing with the Company and/or practicing law on behalf of non-Company clients during the Service Term.

3.      Compensation; Benefits; Expense Reimbursement.

A.      Base Salary.  The Independent Contractor shall receive an annual base salary of $350,000 (the "Base Salary").  The Base Salary shall be payable bi-monthly in accordance with the Company's standard payroll practices, and checks shall be made out to "Jason Frank Law, a Professional Law Corporation."

B.      Bonuses.

(i) Origination Fees.  The Independent Contractor shall be entitled to origination fees equal to 20% of the total net attorneys' fees (the "JF Origination Fees") received by the Company during the Service Term from clients or matters that the Independent Contractor previously originated or subsequently originates on behalf of the Company during the Service Term.  The JF Origination Fees shall be payable bi-annually, and checks shall be made out to "Jason Frank Law, a Professional Law Corporation."  During the Service Term, the Company agrees to pay the Independent Contractor the JF

JFL000001

Origination Fees within 30 days from the end of each of the Company's second and fourth fiscal quarters.

(ii) Profit Share Bonus. The Independent Contractor shall be entitled to a profit share bonus equal to 25% of the annual Profits of the Company (as defined below) (the "Profit Share Bonus") during the Service Term. The Profit Share Bonus shall be payable annually, and checks shall be made out to "Jason Frank Law, a Professional Law Corporation." During the Service Term, the Company agrees to pay the Profit Share Bonus on or before February 15 of each calendar year.

(a)      "Profits of the Company" shall mean: The amount of revenue received by the Company during the calendar year MINUS (i) all monies received by the Company during that calendar year as reimbursement for case related costs incurred by the Company prior to January 1, 2011, and (ii) all expenses paid by the Company during that calendar year, including but not limited to, all overhead, taxes, rent, salaries, bonuses, fringe benefits, origination fees, insurance, referral fees, fees paid to outside co-counsel, leases, expert fees, purchases of equipment and/or machinery, capital expenditures, professional fees, case related costs, travel expenses, judgments, and settlements, provided, however, that the following shall not be deducted when calculating "Profits of the Company":

(1) Any salary or draw paid to Michael Eagan or Michael Avenatti exclusive of origination fees;

(2) Any monies paid to satisfy a judgment or settlement in favor of Robert Stoll in connection with Mr. Stoll's litigation pending against the firm as of the date of this Agreement; and

(3) The Profit Share Bonus paid pursuant to this Agreement.

(b)      Michael Avenatti and Michael Eagan, as the equity partners of the Company (the "Equity Partners"), shall have the sole and absolute discretion to determine what expenses will be paid by the Company in a calendar year, provided however that the Company agrees not to act in bad faith and purposely incur expenses for the sole purpose of reducing the Profit Share Bonus.

(iii) Eden Bonus. The Independent Contractor shall be entitled to a percentage of the net attorneys' fees collected by the Company in connection with the lawsuits concerning Eden Memorial Park Cemetery in an amount to be determined in the sole and absolute discretion of the Equity Partners.

C.      Benefit Plans. During the Service Term and except as otherwise provided herein, the Independent Contractor shall be entitled to participate in any and all benefit plans established by the Company from time to time for the benefit of employees of the Company. Nothing herein contained shall be construed as requiring the Company to establish or continue any particular benefit plan in discharge of its obligations under this Agreement.

D.      Tax Treatment. The Company will make payments under this Agreement to Jason Frank Law, a Professional Law Corporation, and will issue the appropriate tax forms in compliance with all federal, state, local and other applicable tax law, rule or regulations.

E.      No Equity. Anything provided herein or elsewhere to the contrary notwithstanding, in no event shall the Independent Contractor have any equity or equity interest of any kind whatsoever in the Company, and nothing herein is intended to, nor shall it, constitute a grant of equity or a partnership.

F.      Expense Reimbursement. The Independent Contractor shall be entitled to receive reimbursement as soon as practicable from the Company for reasonable and customary business expenses incurred by the

JFL000002

Independent Contractor in performance of its duties and obligations hereunder, provided the Independent Contractor furnishes the Company with vouchers, receipts or other details of such expenses sufficient to substantiate a deduction for such business expenses under applicable laws, rules and regulations.

4.      Termination of the Independent Contractor Agreement.

A.      Termination of Service.  Notwithstanding the establishment of the Service Term, (i) the Company may only terminate the Independent Contractor's service and this Agreement for Cause (as defined below), and (ii) the Independent Contractor may resign for Good Reason (as defined below) at any time, in each case subject to the terms and conditions of this Agreement.

B.      Termination For Cause; Resignation Not For Good Reason.  Notwithstanding anything to the contrary herein, the Company reserves the right to terminate the Independent Contractor's service and this Agreement for Cause.

(i)      "Cause" shall mean:  (a) the Independent Contrator's repeated and willful failure or refusal (i) to substantially perform the Independent Contractor's principal duties with the Company and/or (ii) to abide by the Company policies, practices, procedures or rules that are provided to the Independent Contractor, including but not limited to the requirement that the Independent Contractor refrain from competing with the Company and/or practicing law on behalf of non-Company clients during the Service Term, provided that (1) the Company shall give the Independent Contractor written notice specifically identifying and describing such failure or refusal and (2) such failure or refusal remains uncured for a period of 60 days after delivery of such notice to the Independent Contractor; (b) the engaging by the Independent Contractor in any fraud or gross negligence that would reasonably be expected to have a material detrimental effect on the Company; or (c) the Independent Contractor being convicted of or pleading nolo contendre to a felony.

(ii)      "Good Reason" shall mean a resignation by the Independent Contractor after the occurrence of any one or more of the following conditions, in each case without the Independent Contractor's consent: (a) any reduction to the Independent Contractor's compensation or a failure by the Company to pay any compensation payable to the Independent Contractor under this Agreement in accordance with Section 3 above; (b) any diminution in the Independent Contractor's title, position, reporting relationship, duties, or responsibilities; (c) assignment of duties inconsistent with the Independent Contractor's title, position or authority; or (d) any breach by the Company of this Agreement; provided, that no such event, change or condition shall constitute grounds for a Good Reason (and the Independent Contractor shall have no right to resign for Good Reason by reason thereof) unless both (1) the Independent Contractor provides written notice to the Company of the condition claimed to constitute grounds for a Good Reason, and (2) the Company fails to remedy such condition(s) within 60 days of receiving such notice.

(iii)      If the Company terminates the Independent Contractor's service and this Agreement for Cause or the Independent Contractor resigns without Good Reason, the Company shall have no further obligation to the Independent Contractor other than (a) to pay the Independent Contractor's accrued Base Salary, accrued JF Origination Fees, and a pro-rata Profit Share Bonus through the effective date of termination (collectively, the "Accrued Compensation"), (b) with respect to any rights the Independent Contractor may have pursuant to any insurance or other benefit plans of the Company (collectively, the "Accrued Benefits"), and (c) any un-reimbursed expenses incurred in connection with Section 3(G) above.  The Company agrees to pay the Independent Contractor the Accrued Compensation as follows: the accrued Base Salary in accordance with Section 3(A) above, the accrued JF Origination Fees in accordance with Section 3(B)(i) above (to the extent any JF Origination Fees have not been collected at the time of resignation or termination, such JF Origination Fees shall still be due and payable in accordance with Section 3(B)(i) above), and the pro-rata Profit Share Bonus in accordance with Section 3(B)(ii) above (it being understood that the pro-rata Profit Share Bonus will be

calculated based on the proportion of the applicable year that the Independent Contractor provided services to the Company).

        C.      Death and Disability. Notwithstanding anything to the contrary herein, the Company reserves the right to terminate the Independent Contractor's service and this Agreement on account of the Independent Contractor's death or Disability and the terms of this Section 4(C) shall apply to such termination. "Disability" shall mean a determination by the Company or the Independent Contractor in accordance with applicable law that, due to a physical or mental injury, infirmity or incapacity, the Independent Contractor is unable to perform the essential functions of its services, with or without reasonable accommodation, for 120 days (whether or not consecutive) during any 12-month period. In the event that the Company and the Independent Contractor cannot agree, they shall designate a third party knowledgeable in disability law to make such determination, which shall be binding on the Company and the Independent Contractor. If the Company or the Independent Contractor terminates the Independent Contractor's service and this Agreement because of the Independent Contractor's death or Disability, the Company shall have no further obligations to the Independent Contractor or the Independent Contractor's heirs other than to pay the Independent Contractor the Accrued Compensation, the Accrued Benefits and any un-reimbursed expenses incurred pursuant to Section 3(G) above, and the Independent Contractor shall have no further obligation to the Company.

5.      Information Rights. During the Service Term and thereafter to the extent necessary to enforce the Independent Contractor's rights hereunder, the Independent Contractor shall have the right, upon notice and at reasonable times during normal business hours, to inspect the Company's federal tax returns (including any accompanying Schedule K-1's) filed for the years during the Service Term for the purposes of reviewing or verifying the calculation of the JF Origination Fees or Profits of the Company. The Company shall deliver to the Independent Contractor, (A) within 30 days from the end of the Company's second and fourth fiscal quarters, a detailed calculation of the JF Origination Fees, and (B) within 30 days from the filing of the Company's applicable federal income tax return, a copy of such return (including any accompanying Schedule K-1's). In addition, the Company shall annually deliver to the Independent Contractor, together with the Profit Share Bonus, a detailed calculation of the Profit Share Bonus showing the attorneys' fees received by the Company during the calendar year, together with the Company's expenses.

6.      Representations and Warranties; Covenants. The parties hereby represent and warrant as follows: (i) each party has the legal capacity and unrestricted right to execute and deliver this Agreement and to perform all of its obligations hereunder; (ii) the execution and delivery of this Agreement by each party and the performance of its obligations hereunder will not violate or breach or be in conflict with any fiduciary or other duty, instrument, agreement, document, arrangement, contract or other understanding to which the Company or the Independent Contractor, as applicable, is a party or by which the Company or the Independent Contractor, as applicable, is or may be bound or subject. During the Service Term, the parties covenant not to not enter into any agreement, whether written or oral, in conflict with the provisions of this Agreement.

7.      Indemnification of the Independent Contractor. The Company agrees to indemnify and hold the Independent Contractor harmless from and against any and all damages, claims, costs and expenses, including reasonable attorneys' fees, arising out of any claims against the Company whereby the Independent Contractor is involved or implicated, either directly or indirectly, in light of this Agreement, the Independent Contractor's service with the Company, or the Independent Contractor's position with the Company.

8.      Governing Law; Arbitration.

        A.      Governing Law. This Agreement shall be governed by, construed, and enforced in accordance with the laws of the State of California, without regard to the conflicts of law rules thereof.

JFL000004

23

B.      Arbitration. Any and all disputes of any nature related to this Agreement shall be determined by final and binding arbitration in Los Angeles County, California before a three-arbitrator panel. The parties shall agree on the rules and procedures to be followed in the arbitration at such time as one party notices the other that it is initiating arbitration. If the parties are unable to agree on the rules and procedures to be followed within 15 days, the arbitration shall be administered by JAMS pursuant to its Comprehensive Arbitration Rules and Procedures, and the arbitrator shall apply the laws applicable in the State of California. Judgment on the arbitral award may be entered in any court having jurisdiction thereof. This clause shall preclude the parties from seeking an injunction or other provisional remedies in aid of arbitration from a court of appropriate jurisdiction. The arbitrator shall, in the arbitral award, allocate all or part of the costs of the arbitration, including the fees of the arbitrator and the reasonable attorneys' fees (and accountant's fees) of the prevailing party, for payment by the non-prevailing party, and shall determine the prevailing party for this purpose.

9.      Miscellaneous.

A.      Headings, etc. Section and subsection headings are not to be considered part of this Agreement, are included solely for convenience, are not intended to be full or accurate descriptions of the content thereof and shall not affect the construction hereof.

B.      Successors and Assigns. Neither this Agreement, nor any of the Independent Contractor's or the Company's rights, powers, duties or obligations hereunder, may be assigned by the Independent Contractor or the Company. This Agreement shall be binding upon and inure to the benefit of the Independent Contractor and its heirs and legal representatives and the Company and its successors. Successors of the Company shall include, without limitation, any company or companies acquiring, directly or indirectly, all or substantially all of the assets of the Company, whether by merger, consolidation, purchase, lease or otherwise, and such successor shall thereafter be deemed the "Company" for the purpose hereof.

C.      Notices. Any notices or other communications required or permitted hereunder shall be deemed to have been properly given and delivered if in writing by such party or its legal representative and delivered personally or sent by electronic mail, facsimile, nationally recognized overnight courier service guaranteeing overnight delivery, or registered or certified mail, postage prepaid, addressed as follows:

If to the Independent Contractor to: Jason Frank

                    368 Pershing Drive
                    Playa Del Rey, CA 90293
                    Email: dawntamir@gmail.com; jason36651@yahoo.com

with a copy (which shall not
constitute notice) to:                    Douglas Bouton
                    2120 The Strand, Apt. 7
                    Manhattan Beach, CA  90266
                    Email:  dbouton@boutonlegal.com

If to the Company, to:              Michael Avenatti
                    Eagan Avenatti LLP
                    450 Newport Center Drive, 2ⁿᵈ Floor
                    Newport Beach, CA  92660

Unless otherwise specified herein, such notices or other communications shall be deemed given (a) on the date delivered, if delivered personally, (b) one business day after being sent by a nationally recognized overnight courier providing for overnight delivery, (c) on the date delivered, if delivered by facsimile with confirmation during business hours (or one business day after the date of delivery if delivered after business hours) and (d)

JFL000005

five business days after being sent, if sent by registered or certified mail. Each of the parties hereto shall be entitled to specify a different address by delivering notice as aforesaid to each of the other parties hereto.

D.      Amendment or Modification. The parties hereto may amend or modify this Agreement only by a written instrument executed by each of the parties hereto.

E.      Waiver. No waiver of any provision of this Agreement shall be deemed or shall constitute a waiver of any other provision thereof (whether or not similar), shall constitute a continuing waiver unless otherwise expressly provided nor shall be effective unless in writing and executed (a) in the case of a waiver by the Company, by the Company, and (b) in the case of a waiver by the Independent Contractor, by the Independent Contractor.

F.      Severability. In the event that any provision hereof would, under applicable law, be invalid or unenforceable in any respect, such provision shall (to the extent permitted under applicable law) be construed by modifying or limiting it so as to be valid and enforceable to the maximum extent compatible with, and possible under, applicable law. The provisions hereof are severable, and in the event any provision hereof should be held invalid or unenforceable in any respect, it shall not invalidate, render unenforceable or otherwise affect any other provision hereof.

G.      Survival. Sections 4, 5, and 7-9 shall survive termination of this Agreement.

H.      Entire Agreement. Other than that certain Settlement and Release Agreement among the Company, the Independent Contractor, Michael Avenatti and Michael Eagan, dated as of the Effective Date (the "Settlement Agreement"), this Agreement constitutes the entire agreement among the parties hereto pertaining to the subject matter hereof and supersedes all prior and contemporaneous agreements, understandings, negotiations and discussions, whether oral or written, of the parties with respect to such subject matter. In the event of a conflict between this Agreement and the Settlement Agreement, this Agreement shall control. The Independent Contractor agrees that he is entering into the Settlement Agreement as a condition of this Agreement, whereby the Independent Contractor is settling and releasing any claims he has against the Company, Michael Avenatti and/or Michael Eagan individually, arising out of representations made by John O'Malley concerning the Independent Contractor's status with the Company, as an equity partner or otherwise. In exchange for this release, the Independent Contractor is receiving the following consideration under this Agreement: (a) $90,000 of the total $350,000 Base Salary provided for in this Agreement; (b) 5% of the total 20% JF Origination Fees provided for in this Agreement; and (c) 12.5% of the total 25% Profit Share Bonus provided for in this Agreement. For the avoidance of all doubt, the Settlement Agreement does not in any way waive, release or resolve, in whole or in part, any claims the Independent Contractor may have against John O'Malley individually. Notwithstanding the foregoing, any amounts currently owed to the Independent Contractor by the Company for Origination Fees provided to the Company will remain owed to the Independent Contractor until such sums are paid.

I.      Counterparts. This Agreement and any claims related to the subject matter hereof may be executed in any number of counterparts, each of which shall be deemed an original, but all of which together shall constitute but one and the same instrument. Facsimile transmission or electronic transmission in pdf or comparable format of any signed original document and/or retransmission of any signed facsimile or pdf or comparable format transmission will be deemed the same as delivery of an original.

J.      Relationship of the Parties. The Independent Contractor is engaged by the Company solely as an independent contractor and not as an employee, partner, or joint venturer, and has no authority to bind the Company, by contract or otherwise. The Independent Contractor will not have, and will not represent that it has, any authority to assume or create any obligation, express or implied, to enter into any agreements regarding the Company, or to make any warranties or representations on behalf of the Company or in the Company's name.

JFL000006

The Independent Contractor shall be solely responsible for all matters related to payment of its employees and contractors, including the provision of benefits and all other related employment matters. The Independent Contractor is responsible for the payment of all state, federal, foreign, or local taxes, including income tax, withholding tax, social security tax, or pension contributions on the funds distributed to the Independent Contractor by the Company.

(<i>Signature Page to Follow</i>)

JFL000007

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date first written above.

| | Eagan Avenatti, LLP. <br><br> By: _____ <br> Name:  Michael Avenatti <br> Title:  Managing Partner |
|---|---|
| | Jason Frank Law, a Professional Law Corporation <br><br> By: _____ <br> Name:  Jason Frank <br> Title:   Authorized Signatory |
| | Jason Frank <br><br> By: _____ <br> Name:  Jason Frank |

[Signature Page to Independent Contractor Agreement – Jason Frank]

JFL000008

27