Exhibit 5

## SETTLEMENT AGREEMENT AND RELEASES

This Settlement Agreement and Releases ("Agreement") is entered into this 12th day of December 2017 by and between Jason Frank Law, PLC, a professional law corporation organized in California ("JFL"), Jason Frank ("FRANK"), an individual, Scott Sims ("SIMS"), an individual, Andrew Stolper ("STOLPER"), an individual, and Frank Sims & Stolper LLP, a limited liability partnership organized in California ("FSS") (collectively, the "JFL Parties"), on the one hand, and Eagan Avenatti LLP ("EA"), a limited liability partnership organized in California, Avenatti & Associates, APC ("A&A"), a professional corporation organized in California, Michael Avenatti ("AVENATTI"), an individual, and Michael Eagan, an individual ("EAGAN") (collectively, the "EA Parties"), on the other hand. The JFL Parties and EA Parties are collectively referred to as the "Parties."

WHEREAS, JFL and FRANK entered into an Independent Contractor Agreement with EA effective November 1, 2013 (the "JFL Agreement") and prior to that time FRANK had been an employee of EA;

WHEREAS, SIMS entered into an Employment Agreement with EA dated March 1, 2014 (the "SIMS Employment Agreement");

WHEREAS, on or about February 28, 2016, JFL filed a Demand for Arbitration with JAMS against EA asserting claims for damages and other remedies for breach of contract, which demand was later amended to include claims for fraud, unjust enrichment, declaratory relief and punitive damages (the "JFL Arbitration");

WHEREAS, on or about May 20, 2016, JFL, FRANK, SIMS and STOLPER ceased practicing law at EA and formed a new law firm, FSS;

WHEREAS, the clients in the matters listed on Exhibit "A" (attached hereto) (collectively, the "Matters") terminated EA as their counsel in the Matters and retained FSS as their counsel in certain of the Matters;

WHEREAS, EA asserted attorneys' liens in the Matters and/or claimed it had the right to recover its reasonable attorneys' fees and costs for the work performed at EA on the Matters;

WHEREAS, on or about July 22, 2016, EA filed a Demand for Arbitration with JAMS against EA's former client, Kimberly Birbrower, seeking to recover fees and costs in the Birbrower v. Quorn Foods, Inc. matter, which is one of the Matters (the "EA/Birbrower Arbitration");

WHEREAS, on or about August 9, 2016, SIMS filed a Demand for Arbitration with JAMS against EA seeking certain sums owed under the SIMS Employment Agreement, including claims for breach of contract, fraud, accounting and constructive trust (the "SIMS Arbitration");

WHEREAS, on or about September 23, 2016, EA filed counterclaims against SIMS in the SIMS Arbitration asserting claims for breach of contract, fraud, violation of the California Uniform Trade Secret Act, breach of fiduciary duty, breach of duty of loyalty, conversion, accounting, and constructive trust;

WHEREAS, on or about September 12, 2016, EA filed counterclaims against JFL in the JFL Arbitration asserting claims for breach of contract, fraud, breach of fiduciary duty, breach of duty of loyalty, conversion, accounting, constructive trust and tortious interference;

WHEREAS, on or about December 15, 2016, EA filed a complaint in California Superior Court, County of Orange, Case No. 30-2016-00892564-CU-BC-CJC against its former client, William Scott Callaway, seeking to recover fees and costs in the Callaway v. Mercedes Benz USA, Inc. et al. matter, which is one of the Matters (the "EA/Callaway Lawsuit");

WHEREAS, on or about December 21, 2016, EA filed a complaint in California Superior Court, County of Orange, Case No. 30-2016-00893847-CU-MC-CJC against Paul Root and Madison Street Partners, Inc. asserting claims for aiding and abetting breach of duty of loyalty and aiding and abetting fraud (the "EA/Root Lawsuit");

WHEREAS, on or about February 8, 2017, EA's former clients, Authentic Entertainment Properties, LLC and Authentic Entertainment Properties Development, LLC (collectively "AEP") filed a Demand for Arbitration with JAMS against EA seeking declaratory relief and damages relating to EA's former representation of AEP in the AEP v. Royal Center Associates, LLC et al. matter, which is one of the Matters (the "AEP/EA Arbitration");

WHEREAS, on or about February 28, 2017, EA filed a motion to adjudicate its attorney lien against AEP in the District Court for Clark County Nevada, in the AEP v. Royal Center Associates, LLC et al. matter, which such motion was denied and is currently being appealed by EA;

WHEREAS, on or about March 1, 2017, an Involuntary Bankruptcy Petition against EA, seeking that EA be a debtor in a Chapter 11 case was filed in the Middle District of Florida, Case No. 6:17-bk-01329-KSJ (the "Bankruptcy Case");

WHEREAS, on or about March 10, 2017, EA consented to entry of Order for Relief in the Bankruptcy Case;

WHEREAS, on or about May 16, 2017, the Bankruptcy Case was transferred to the Central District of California, Santa Ana Division, before the Honorable Catherine E. Bauer (the "Bankruptcy Court"), and assigned a new case number 8:17-bk-1191-CB;

WHEREAS, on or about June 19, 2017, JFL filed a Proof of Claim in the Bankruptcy Case in the amount of not less than $18,615,886, which included (a) $12,396,633 in unpaid compensation under the JFL Agreement; (b) $1,868,221 in prejudgment, prepetition interest; (c) $500,000 in pre-petition attorneys' fees and costs; and (d) fraud damages and punitive damages in an unliquidated amount but likely in excess of $4,000,000;

WHEREAS, on or about June 19, 2017, FRANK, SIMS, STOLPER and FSS also filed Proofs of Claim in the Bankruptcy Case;

WHEREAS, on or about July 12, 2017, JFL filed a motion for relief from stay to proceed with the JFL Arbitration [Bankruptcy Case Docket Nos. 155, *et al.*] ("JFL RFS Motion"), the Debtor and certain other parties filed oppositions to the JFL RFS Motion, JFL filed a reply to those oppositions, a hearing on the JFL RFS Motion commenced on August 9, 2017 and was continued by direction of the Bankruptcy Court until September 20, 2017 and repeated times thereafter through and including December 13, 2017;

WHEREAS, AVENATTI is the managing member and majority equity holder of EA and solely owns and controls A&A;

WHEREAS, JFL, FRANK and SIMS have asserted that AVENATTI is personally liable to them for all or substantially all claims they have against EA and that A&A may be liable to them, all of which Avenatti and A&A dispute;

WHEREAS, it is in the personal, professional and business interests of AVENATTI and the professional and business interests of EA and A&A that the disputes among the JFL Parties and EA Parties be resolved promptly and each has concluded that he/it will received meaningful value if this Agreement is executed, approved and fully satisfied; and

WHEREAS, the Parties desire to resolve any and all disputes between them on the terms set forth herein (the "Settlement");

NOW THEREFORE, for and in consideration of the mutual covenants contained herein and for other good and valuable consideration, the sufficiency of which is hereby acknowledged, the Parties agree as follows:

## 1.   Dismissal of Bankruptcy Case.

1.1.   Subject to Paragraph 1.5 below, the effectiveness of the terms and obligations of this Agreement are contingent upon (a) EA filing a motion ("Settlement and Dismissal Motion") with the Bankruptcy Court seeking entry of one or more orders (the "Orders") approving the Settlement and authorizing and directing the Debtor to fully comply with all terms of this Agreement pursuant to Fed. R. Bankr. Pro. 9019 ("Settlement Order"), and dismissing the Bankruptcy Case, pursuant to Bankruptcy Code Section 1112(b) ("Dismissal Order"), on terms acceptable to JFL and EA, on or before January 3, 2018,with a hearing on the Settlement and Dismissal Motion to be held on January 24, 2018; (b) entry of the Orders on or before January 31, 2018; (c) the Bankruptcy Case being dismissed within sixteen (16) calendar days after entry of the Dismissal Order; (d) execution of the Guaranty Agreement (as defined below), on or before December 12, 2017; and (e) if a stay of the Settlement Order or Dismissal Order has been entered pursuant to Rule 8007 of the Federal Rules of Bankruptcy Procedure ("Rule 8007"), a

Termination Notice, as defined in Paragraph 1.5 below, having not been provided by JFL or EA. The proposed Order(s) are attached as Exhibit B.

1.2.    The JFL Parties will not oppose any of the relief sought in the proposed Orders, nor will they encourage others to do so, all subject to the timely satisfaction of the deadlines set forth herein (collectively "Deadlines").

1.3.    In the event the Orders are not entered by the Deadlines for their entry, or the Guaranty Agreement is not executed by the pertinent Deadline for its execution, the Parties shall be returned to the *status quo ante* prior to their execution of this Agreement, and the Agreement shall be deemed null and void, and neither this Agreement, its execution nor any statements contained therein may be used in any subsequent proceedings in any court or arbitration.

1.4.    The hearing on the JFL RFS Motion shall be continued until January 24, 2018.

1.5.    If a stay of the Settlement Order or Dismissal Order is entered pursuant to Rule 8007 (a "Stay Order") or if the terms of this Agreement are materially modified by the Court, then JFL or EA may elect to withdraw from and terminate this Agreement, in which case this Agreement and all Orders entered thereon will be rescinded and all Parties will be restored to the *status quo ante* prior to the execution of this Agreement, and the Agreement shall be deemed null and void, and neither this Agreement, its execution nor any statements contained therein may be used in any subsequent proceedings in any court or arbitration.  If JFL or EA elects to exercise this right to terminate this Agreement, it shall provide notice of this election to the other parties to this Agreement, in writing, within five (5) business days after the Stay Order is entered (the "Termination Notice").  Upon such election, the Parties will cooperate in taking any action necessary to request that the appropriate court vacate the Settlement Order, the Dismissal Order and Stay Order, and will not object to or oppose such actions.

1.6.    If a Stay Order is issued and neither JFL or EA elect to terminate the Agreement in accordance with Paragraph 1.5, then the time for performing all obligations under this Agreement will commence upon the later of: (a) sixteen (16) calendar days after the Stay Order is no longer in effect provided that the Settlement Order and Dismissal Order have been affirmed; or (b) the time when the obligation would have otherwise been required to be performed under the terms of this Agreement.

2.    **Resolution of EA's Asserted Liens and Right to Attorneys' Fees and Costs in the Matters.**

2.1.    Within sixteen (16) calendar days of entry of the Dismissal Order, and provided no stay of the Settlement Order or Dismissal Order having been issued pursuant to Rule 8007, EA will withdraw all purported liens asserted in the Matters and will forever waive and forego, with prejudice and finality, any present or future claims for attorneys' fees, costs, expenses, damages, or any other compensation or remedies arising out of or relating to the Matters.

137774123.8                                4

2.2.     Upon the sixteenth (16th) day following the entry of the Settlement Order, and provided no stay of the Settlement Order or Dismissal Order having been issued pursuant to Rule 8007, the EA Parties will be deemed to have released and forever waived and foregone, with prejudice and finality, any present or future claims for damages, legal fees and costs, or other remedies against (a) the JFL Parties, (b) the current, prior or future parties in the Matters; (c) the current, prior or future co-counsel of EA or FSS in the Matters, or (d) any other party or their counsel for claims arising out of or relating to the Matters, as more fully set forth in Section 5 of this Agreement.

2.3.     In exchange for the consideration provided under the terms of this Agreement, JFL has agreed to reduce its claim in the Bankruptcy Case, as set forth in paragraph 3.1, below, and SIMS, FRANK, STOLPER and FSS have agreed to waive, forego and withdraw each of their claims in the Bankruptcy Case, subject to and except for the terms of the Releases provided in Paragraph 5 below and compliance with the terms and conditions of this Agreement.

2.4.     In addition, the JFL Parties have agreed that EA will receive 50% of any and all legal fees which would otherwise be paid to FSS or FRANK in the future in connection with FSS's contingency agreement with AEP in the <u>AEP v. Royal Center Associates, LLC et al.</u> matter. This arrangement will be documented in a separate written agreement between EA, AEP and FSS (the "AEP Fee Sharing Agreement"), the execution of which shall be required for this Agreement to take effect. A copy of the AEP Fee Sharing Agreement is attached as Exhibit C.

3.      **Settlement Payments to JFL.**

3.1.     Upon entry of the Settlement Order, JFL will have an allowed claim against EA in the amount of TEN MILLION DOLLARS ($10,000,000.00), which claim ("JFL Allowed Claim") of JFL and liability of EA will survive dismissal of the Bankruptcy Case, and will not be subject to any further defenses, offsets, counterclaims, oppositions, answers, objections, contests, disputes or other challenges by any EA Party or any other party, provided, however, if (a) the Dismissal Order is not entered, (b) a Stay Order is entered and a Termination Notice is timely sent, or (c) the Settlement Order is overturned, vacated or remanded on appeal, then the JFL Allowed Claim will be null and void and the proof of claim it filed in the Bankruptcy Case and all the claims, rights, and damages asserted therein and in the JFL Arbitration will remain pending. Nothing in this Paragraph 3.1 is intended to limit the rights of any Parties to enforce the terms of this Agreement.[1]

---

[1] For the avoidance of any doubt, the Parties arrived at the JFL Allowed Claim amount of TEN MILLION DOLLARS ($10,000,000.00) <u>after</u> deducting the credit for fees on the Matters as described in Paragraph 2.3 above and additionally JFL, thereafter, further agreed to reduce its claim to TEN MILLION DOLLARS ($10,000,000.00) as part of this Settlement. In other words, the Allowed Claim of TEN MILLION DOLLARS ($10,000,000.00) will not be further reduced by any credit for fees, costs, expenses, damages or any other compensation allegedly owed on the Matters.

3.2.    EA will pay JFL the sum of FOUR MILLION EIGHT HUNDRED AND FIFTY THOUSAND DOLLARS ($4,850,000.00) pursuant to the following schedule:

    3.2.1.   Within sixty (60) calendar days after the entry of the Dismissal Order, and provided no stay of the Settlement Order or Dismissal Order having been issued pursuant to Rule 8007 and remains in effect, EA will wire JFL the sum of TWO MILLION DOLLARS ($2,000,000.00), in immediately available funds, pursuant to written wire instructions to be provided by JFL.

    3.2.2.   Within one-hundred and twenty (120) calendar days after the entry of the Dismissal Order, and provided no stay of the Settlement Order or Dismissal Order having been issued pursuant to Rule 8007 and remains in effect, EA will wire JFL the sum of TWO MILLION EIGHT HUNDRED AND FIFTY THOUSAND DOLLARS ($2,850,000.00), in immediately available funds, pursuant to written wire instructions to be provided by JFL.

    3.2.3.   The payments to be made in accordance with Paragraphs 3.2.1 and 3.2.2 are collectively referred to as the "Settlement Payments."

3.3.    In consideration of the terms of this Agreement, including, without limitation, the Releases set forth herein and the nature and pendency of the disputes between JFL and the EA Parties, AVENATTI agrees to personally guarantee, in his individual capacity, the FOUR MILLION EIGHT HUNDRED FIFTY THOUSAND DOLLARS ($4,850,000.00) of Settlement Payments.  The complete terms of this guaranty shall be set forth in a separate agreement ("Guaranty Agreement") between JFL and AVENATTI.  A copy of the Guaranty Agreement is attached as Exhibit D.

3.4.    As will be set forth in the Guaranty Agreement, it is the intention of JFL and AVENATTI that AVENATTI's payment obligations under the Guaranty Agreement shall be non-dischargeable, under 11 U.S.C. Section 523(b) in the event AVENATTI becomes a debtor in a bankruptcy case while the Settlement Payments remain outstanding and thereafter to the extent any party in (1) AVENATTI's bankruptcy case or (2) a subsequent bankruptcy case or similar proceeding in which EA is the debtor or has a similar role seeks to recover all or any portion of the Settlement Payments.

3.5.    If the Settlement Payments are paid by EA to JFL within the timeframes and in the manner required by this Agreement, then effective 367 calendar days after the final Settlement Payment is received by JFL, JFL will waive and forego its right to collect any part of the remaining FIVE MILLION ONE HUNDRED AND FIFTY THOUSAND DOLLARS ($5,150,000.00) of its allowed claim.

3.6.    <u>Remedy Upon Payment Default.</u>  If the Settlement Payments are not made within three (3) business days of the applicable Settlement Payment date due, then all of the EA Parties agree that they will not oppose the entry by the Bankruptcy Court of a final, non-

appealable judgment against EA in favor of JFL in the amount of TEN MILLION DOLLARS minus any amounts previously paid to JFL pursuant to this Agreement (the "Final Judgment"), and will not oppose the reopening of the Bankruptcy Case for the limited and sole purpose only of entering this Final Judgment. JFL and the EA Parties expressly consent to the exclusive jurisdiction of the Bankruptcy Court to enter this Final Judgment against EA. By seeking or obtaining any of the relief described in this paragraph, JFL will not in any way waive or otherwise prejudice or impact its right to enforce the personal guarantee and Guaranty Agreement set forth in Paragraphs 3.3 and 3.4 of the Agreement.

4. **Dismissal of Lawsuits and Arbitrations.**

4.1.    Within sixteen (16) calendar days of entry of the Dismissal Order, and provided no stay of the Settlement Order or Dismissal Order having been issued pursuant to Rule 8007, the commencing party in each of the following actions shall dismiss the actions and all claims therein with prejudice: (a) the JFL Arbitration and EA's counterclaims therein; and (b) the SIMS Arbitration and EA's counterclaims therein. With respect to the other litigation, EA will not pursue the EA/Birbrower Arbitration, the EA/Callaway Lawsuit, the EA/Root Lawsuit or any claims against AEP. AEP has dismissed, without prejudice, the AEP/EA Arbitration.

5. **Releases**.

5.1.    **Release of EA Parties by JFL Parties**. Effective upon the latest of (a) entry of Settlement Order, (b) entry of the Dismissal Order, and (c) dismissal of the Bankruptcy Case, and provided no stay of the Settlement Order or Dismissal Order having been issued pursuant to Rule 8007, and in consideration of the terms of this Agreement and other good and valuable consideration, JFL, FRANK, SIMS, STOLPER and FSS on their own behalf and on behalf of each and all of their respective legal predecessors, successors, assignees, attorneys, agents, partners, owners, employees, heirs, parents, children, spouses, and related organizations hereby irrevocably and unconditionally release, and fully and forever discharge, absolve, and covenant not to sue the EA Parties, and each of them, and every one of their respective partners, officers, directors, owners, agents, employees, companies, parents, subsidiaries, divisions, affiliates, attorneys, trustees, legatee, personal representative, administrators, insurers, fiduciaries, executors, representatives, predecessors, successors, assigns, related parties, heirs, parents, children and spouses from and for any and all claims, causes of action, liabilities, damages, legal or administrative relief, of any basis or source, whether known or unknown, that were, have been or could have been asserted now, in the past, or in the future, including, but not limited to, any and all claims raised in the JFL Arbitration, the Sims Arbitration or the Bankruptcy Case and/or any and all claims arising out of or relating to the JFL Agreement, the Sims Agreement and JFL's, Frank's, Sims' or Stolper's employment at or other rendition of services at EA. However, and notwithstanding any other terms in this Agreement, this release does not include or in any way release or waive claims held by any of the JFL Parties for indemnification, contribution and insurance coverage for any claims brought against them related to their employment at, or rendition of services at,

EA, including without limitation indemnification for tax liability that they may have now or in the future against EA. Further, notwithstanding the foregoing or any other terms of this Agreement, the releases set forth in this paragraph shall not operate to release the EA Parties from any of their payment and other covenants, obligations and duties under this Agreement or the Guaranty Agreement, nor will they in any way waive, limit or foreclose any of the JFL Parties from seeking and obtaining any appropriate remedies for any violation of the terms of this Agreement or the Guaranty Agreement.

5.2.    **Release of JFL Parties by the EA Parties.** Effective upon the latest of (a) entry of the Settlement Order, (b) entry of the Dismissal Order, and (c) dismissal of the Bankruptcy Case, and provided no stay of the Settlement Order or Dismissal Order having been issued pursuant to Rule 8007, and in consideration of the terms of this Agreement and other good and valuable consideration, EA, EAGAN, A&A and AVENATTI on their own behalf and on behalf of each and all of their respective legal predecessors, successors, assignees, attorneys, agents, partners, employees, heirs, parents, children, spouses, creditors, owners, executors, trustees and related parties hereby irrevocably and unconditionally release, and fully and forever discharge, absolve, and covenant not to sue the JFL Parties, and each of them, and every one of their respective partners, officers, directors, owners, agents, employees, companies, subsidiaries, divisions, affiliates, attorneys, trustees, legatee or personal representative, administrators, insurers, fiduciaries, executors, representatives, predecessors, successors, assigns, related organizations, heirs, parents, children and spouses from and for any and all claims, causes of action, liabilities, damages, legal or administrative relief, of any basis or source, whether known or unknown, that were, have been or could have been asserted now, in the past, or in the future. This release includes, but is not limited to any and all claims or counterclaims raised in the JFL Arbitration, the SIMS Arbitration or the Bankruptcy Case and/or any and all claims arising out of or relating to the JFL Agreement, the SIMS Agreement or the Parties employment at EA or other rendition of services at EA, or any and all claims for tortious interference, unfair competition, misappropriation, trade secret, conversion, fraud, breach of fiduciary duty, breach of duty or other such claims against the JFL Parties. Notwithstanding the foregoing, theses releases shall not operate to release the JFL Parties from any of their covenants, obligations and duties under this Agreement or the Guaranty Agreement, nor will they in any way waive, limit or foreclose any of the EA Parties from seeking and obtaining any appropriate remedies or relief for any violation of the terms of this Agreement or the Guaranty Agreement.

5.3.    **Release of Counsel in the Matters by the EA Parties.** Effective upon the latest of (a) entry of Settlement Order, (b) entry of the Dismissal Order, and (c) dismissal of the Bankruptcy Case, and provided no stay of the Settlement Order or Dismissal Order having been issued pursuant to Rule 8007, and in consideration of the terms of this Agreement and other good and valuable consideration, each of EA, EAGAN, A&A and AVENATTI on their own behalf and on behalf of each and all of their respective legal predecessors, successors, assignees, attorneys, agents, partners, employees, heirs, parents, children, spouses, creditors and related organizations hereby irrevocably and unconditionally release, and fully and forever discharge, absolve, and covenant not to sue the current, past or future co-counsel, in-house counsel, local counsel or subsequent

counsel for current, past or future clients of FSS in the Matters for any claims for attorneys' fees, costs, expenses, damages, or any other compensation or remedies arising out of or related to the matters listed on Exhibit "A," whether known or unknown, that were, have been or could have been asserted now, in the past, or in the future. The persons and entities covered by this release include, but are not limited to: (a) Franklin D. Azar & Associates, P.C., Franklin D. Azar, Esq. Keith R. Scranton, Esq. and Jonathan Parrott, Esq.; (b) Law Offices of Steven R. Young and Steven R. Young, Esq.; (c) Girardi Keese, LLP and James O'Callahan, Esq.; (d) McNicholas & McNicholas, LLP, Patrick McNicholas, Esq., Matthew McNicholas, Esq., Philip Shakhnis Esq., and Michael J. Kent, Esq.; (e) Yuhl Carr LLP, Eric Yuhl, Esq. and Colin Yuhl Esq.; (f) Snell & Wilmer LLP and Steve T. Graham; (g) Lewis Roca Rothgerber Christie LLP and Dan R. Waite, Esq.; (h) Bridgford Gleason & Artinian, Richard K. Bridgford, Esq. and Michael H. Artinian, Esq.; (i) Orrick, Herrington & Sutcliffe LLP and Jörg Ritter, Esq.; (j) Osborn Machler and Simeon J. Osborn, Esq.; (k) Smyth & Mason PLLC and Jeffrey Smyth Esq. and (l) FSS, FRANK, SIMS and STOLPER as well as their respective legal predecessors, successors, assignees, attorneys, agents, partners, employees and related organizations.

5.4. **Release of the Clients in the Matters by the EA Parties.** Effective upon the latest of (a) entry of Settlement Order, (b) entry of the Dismissal Order, and (c) dismissal of the Bankruptcy Case, and provided no stay of the Settlement Order or Dismissal Order having been issued pursuant to Rule 8007, each of EA, EAGAN, A&A and AVENATTI on their own behalf and on behalf of each and all of their respective legal predecessors, successors, assignees, attorneys, agents, partners, employees, heirs, parents, children, spouses, creditors and related organizations hereby irrevocably and unconditionally release, and fully and forever discharge, absolve, and covenant not to sue the clients and class members in the Matters for any claims for attorneys' fees, costs, expenses, damages, or any other compensation or remedies arising out of or related to the Matters whether known or unknown, that were, have been or could have been asserted now, in the past, or in the future. The persons and entities covered by this release include, but are not limited to: (a) Kimberly Birbrower; (b) William (Scott) and Elizabeth Callaway; (c) Authentic Entertainment Properties, LLP, Authentic Entertainment Properties Development, LLP, RCC Company, LLC, Robert Coffman, Robert O'Neil and Steve Graham; (d) Hannes Kuhn; (e) Gary and Louise Weaver; (f) Jeffrey Wall; (g) the Estate of Jonathan A. Spound, Corey Spound, Michael Spound, and Amy Spound; (h) Skylar Ward; (i) Jamie Deehan; (j) Rasheed, Robinson and Jiminez; (k) Shayna Broadstone and Kristine Billon; (l) Benjamin Lagunas, Dianna Mendoza and Susan Jung; and (m) Al Chaffee, Yuping Chen, Jeanne Demund, Laird Devick, Todd Hager, Ash Hanlon, Peter Heathcote, Nathaniel Heathcote, Mike Scheffler, Matthew Wahlman and Michael Wilson, as well as their respective legal predecessors, successors, assignees, attorneys, agents, partners, employees, related organizations, heirs, parents, siblings and children.

6. **Waiver of Civil Code § 1542**. Each of the Parties has read and understood the following language contained in Section 1542 of the California Civil Code:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS
> WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT

TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OF HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

To the extent that Section 1542 is applicable, each of the Parties hereto expressly waives all rights, if any, that they may have under this statute.

7.  **No Admission of Liability**.  This Agreement is made in settlement of claims and allegations which are denied, disputed, and contested.  Neither this Agreement nor anything contained in this Agreement shall be construed as an admission of any fact, issue, liability, or responsibility by any Party hereto to any other Party hereto, all of which are expressly denied.

8.  **Assignment**.  Each of the Parties represents and warrants that he, she, or it has not assigned or transferred to any person not a Party to this Agreement any part or portion of any matter released under this Agreement, and each Party agrees to defend, indemnify, and hold harmless the other Parties against any claim (including the payment of attorneys' fees and costs actually incurred whether or not litigation or other proceedings are commenced) based on or in connection with, or arising out of any such assignment or transfer made, purported, or claimed.  Each of the Parties represents and warrants that he, she, or it will not assign or transfer to any person not a Party to this Agreement any part or portion of any obligations or liabilities created under this Agreement, except that JFL may assign its rights to receive the Settlement Payments to any party, in its sole discretion, and no Party may assign any of its other rights or obligations.  Each Party agrees to defend, indemnify, and hold harmless the other Parties against any claim (including the payment of attorneys' fees and costs actually incurred whether or not litigation or other proceedings are commenced) based on or in connection with, or arising out of any such assignment or transfer made, purported, or claimed in violation of this paragraph.

9.  **Indemnification of Claims Brought by Green Street Advisors, LLC**.  The EA Parties, and each of them, hereby agree they will fully indemnify the JFL Parties and the Estate of Jonathan A. Spound and its Administrators, Corey and Michael Spound, for any and all claims brought by Green Street Advisors, LLC ("Green Street") against them individually or collectively for amounts owed under the Service Engagement Agreement entered into between EA and Green Street in the matter <u>Spound v. SSV Properties et al.</u>, dated March 31, 2016, and modified by an Addendum with the same date (the "Green Street Engagement"), including but not limited to providing a defense and paying for all reasonable attorneys' fees, costs and expenses incurred defending against such claims.

10. **Mutual Non-Defamation**.  Each of the Parties agree that they will not make any defamatory statements about each other to any third party, whether orally or in writing.

11.  **Changes to FSS Website.** At the request of EA, FSS has made changes to its website with respect to matters that were previously resolved at EA, and those changes will remain in effect as long as such matters are included on the website.

12.  **EA Cooperation on Fee Applications.** EA will cooperate with FSS to promptly compile and provide FSS with all time sheets, emails and other records documenting the time spent at EA on the disputed Matters so that FSS may submit such time in support of any necessary fee applications or other motion practice.

13.  **EA Agreement to Automatically Forward Emails.** EA shall arrange to have all emails sent to the EA email addresses for FRANK, SIMS, STOLPER or Maritza Nowowiejski automatically forwarded to FRANK, SIMS, STOLPER and Maritza Nowowiejski at FSS for a period expiring no earlier than December 31, 2018, and thereafter disable the email addresses.

14.  **EA Agreement to Delete FRANK's Personal Folder.** EA agrees that FRANK will be provided with access to his personal folder on EA's computer system, and upon request, will permanently delete any such items from EA's system.

15.  **Destruction of Documents and Use in Future Legal Proceedings.** Within sixteen (16) calendar days of entry of the Dismissal Order, and provided no stay of the Settlement Order or Dismissal Order having been issued pursuant to Rule 8007, the Parties and each of their respective attorneys, consultants, experts, agents, and representatives and any other person or entity under the direction or control of any of them, and any other person or entity that they caused information to be disseminated to will destroy the original and all copies of the following materials and documents, whether in hard copy or electronic form:

- All discovery, documents, materials, and electronic files received from any Party that were marked confidential.

The Parties shall also jointly request JAMS and its arbitrators to destroy its entire file relating to the JFL arbitration, with the exception of billing information, within 10 days or other reasonable time period proposed by JAMS and agreed to by the Parties, and carry out all reasonable steps to ensure compliance.

Further, to the extent consistent with their professional, ethical and legal obligations, the Parties further agree they will not use the following documents in any subsequent legal proceeding, litigation or arbitration, unless the litigation is between the Parties:

- All discovery responses provided by any Party during the JFL Arbitration;
- All orders entered by any arbitrator during the JFL Arbitration relating to discovery or sanctions;
- All pleadings relating to any motion for sanctions and/or terminating sanctions submitted in connection with the JFL arbitration, including but not limited to all exhibits filed in connection with any such pleading.

16. **Payment, Dismissal and Release Obligations Are Not Excused by Alleged Breaches of this Agreement.** The payment, dismissal and release obligations set forth in this Agreement and the Guaranty Agreement will not be delayed or excused by any alleged breach or violation of Section 7 through 27 of this Agreement. However, any such breaches may be remedied pursuant to the dispute resolution procedures set forth in Paragraph 21 of this Agreement.

17. **Representations and Warranties.** The Parties hereto represent and warrant that each has read and understood and has received independent legal advice with respect to the advisability of making this Agreement, and/or has had the opportunity to obtain such legal advice and has knowingly entered into this Agreement without taking advantage of the opportunity to obtain such advice. Each Party has made such investigation of the facts pertaining to this Agreement and of all other matters pertaining hereto as they deem necessary. The Parties hereto represent and warrant that each signatory hereto has the full right and authority to enter into this Agreement and bind the Party on whose behalf he, she, or it has executed this Agreement.

18. **Further Assurances.** Each Party hereto agrees to cooperate fully and to execute any and all supplementary documents and to take all additional actions that may be necessary or appropriate to give full force and effect to the basic terms and intent of this Agreement and which are not inconsistent with its terms and intent.

19. **Headings.** The various headings in this Agreement are inserted for convenience only, and shall not be deemed a part of or in any manner affect this Agreement or any provision hereof.

20. **Governing Law.** This Agreement shall be governed and construed in accordance with the substantive laws of the State of California and the United States Bankruptcy Code. Respective counsel for each Party hereto has participated in the drafting of, read, and approved the language of this Agreement. The language of this Agreement shall be construed as a whole according to its fair meaning, and not strictly for or against any of the Parties hereto.

21. **Dispute Resolution Procedure.** Any disputes regarding this Agreement, with the exception of the procedures set forth in Paragraph 3.6 above pertaining to failures to make the Settlement Payments in accordance with the terms of this Agreement, shall be first submitted to the Honorable Louis Meisinger to resolve in mediation, and the cost of the mediation shall be equally borne by the JFL Parties, on the one hand, and the EA Parties, on the other hand. If the Parties are unable to resolve the dispute, then 10 days after the mediation, they will submit the claim to binding arbitration before Benchmark Resolution Group, Inc. (the organization recently formed by Judge Meisinger) in Los Angeles, California to be resolved employing their rules and procedures for arbitration.

22. **Waiver/Severability.** The Parties agree that no waiver by any Party of any particular provision or right under this Agreement shall be deemed to be a waiver of any other

provision or right herein.  The Parties further agree that each provision or term of this Agreement is intended to be severable from the others so that if any particular provision or term hereof is or determined to be illegal or invalid for any reason whatsoever, such illegality or invalidity shall not affect the legality or validity of the remaining provisions and terms hereof.

23.  **Attorneys' Fees**.  The Parties agree that should any relief be brought by any Party to enforce any provision or right under this Agreement, the prevailing party shall be entitled to recover, in addition to any other relief, reasonable attorneys' fees and costs incurred therein.

24.  **Entire Agreement.**  This Agreement constitutes the sole and entire agreement and understanding between the Parties concerning the subject matter hereof and supersedes all prior agreements and understandings between the Parties on those subjects hereto with the exception of (a) the AEP Fee Sharing Agreement and the Guaranty Agreement and (b) the Separation Agreement entered into between EA and STOLPER dated May 23, 2016 (the "STOLPER Separation Agreement").  If there is an inconsistency between this Agreement and the STOLPER Separation Agreement, this Agreement will control.  Each of the Parties hereto acknowledge to each of the other Parties that no other Party or any agent or attorney of any Party has made any promise, representation or warranty whatsoever, express or implied, written or oral, not contained herein concerning the subject matter hereof to induce him, her, or it to execute this Agreement, and each of the Parties hereto acknowledges that he, she, or it has not executed this Agreement in reliance on any promise, representation or warranty not expressly contained herein.  No person has any authority to make any representation or promise on behalf of any Party that is not set forth herein.  This Agreement may be modified only with a written instrument duly executed by each of the Parties hereto.

25.  **Binding Agreement.**  This Agreement shall bind and shall inure to the benefit of successors and assigns of each Party.  With respect to the individual Parties, this Agreement shall also bind and inure to the benefit of his or her heirs, assigns, executors, legatees, administrators and personal representatives.  With respect to the entity Parties, this Agreement shall also bind and inure to the benefit of any parent, affiliate, predecessor-in-interest, successor-in-interest, transferee, endorsee, or assign.

26.  **Notice Provision**.  Any and all notices required by this Agreement shall be mailed and emailed in writing to the following:

   26.1.  **To the JFL Parties**.  To Jason Frank, Scott Sims, & Andrew Stolper, Frank Sims & Stolper LLP, 19800 McArthur Blvd., Suite 855, Irvine, California 92612, jfrank@lawfss.com; ssims@lawfss.com; astolper@lawfss.com

   26.2.  **To the EA Parties**.  To Michael Avenatti & Michael Eagan, Eagan Avenatti, LLP, 520 Newport Center Drive, Ste. 1400, Newport Beach, CA 92660, mavenatti@eaganavenatti.com.

137774123.8                    13

27. **Execution/Counterparts.** This Agreement may be executed in counterparts, and a facsimile or PDF signature shall have the same force and effect as an original signature penned in ink. When each of the Parties hereto has signed and delivered at least one such counterpart to all other Parties or their counsel, each counterpart shall be deemed an original, and when taken together with other signed counterparts, shall constitute one fully executed agreement which shall be binding upon and effective as to all Parties.

IN WITNESS WHEREOF, the Parties hereto have caused this Agreement to be executed as of the day and year indicated below.

December 2, 2017        EAGAN AVENATTI LLP

                        Michael J. Avenatti
                        Its Managing Partner

December 2, 2017        AVENATTI & ASSOCIATES, APC

                        Michael J. Avenatti
                        Its President

December 2, 2017        MICHAEL J. AVENATTI

                        Michael J. Avenatti
                        In his individual capacity

December 2, 2017        MICHAEL Q. EAGAN

                        Michael Q. Eagan
                        In his individual capacity

December 2017           JASON FRANK LAW PLC

                        Jason M. Frank
                        Its President

137774123 8                          14

December 12, 2017

FRANK SIMS & STOLPER, LLP

_____
Jason M. Frank
Partner

December 12, 2017

JASON M. FRANK

_____
Jason M. Frank
In his individual capacity

December 12, 2017

SCOTT H. SIMS

_____
Scott H. Sims
In his individual capacity

December 12, 2017

ANDREW D. STOLPER

_____
Andrew D. Stolper
In his individual capacity

APPROVED AS TO FORM:

January 30, 2018
~~December ___, 2017~~

PACHULSKI STANG ZIEHL & JONES LLP

_____
~~Richard M. Pachulski~~  Robert M. Saunders
Counsel to Eagan Avenatti LLP

59

December 22, 2017                    PERKINS COIE LLP

_____

Sara L. Chenetz
Counsel to the JFL Parties

December ___, 2017                    SULMEYER KUPETZ LLP

_____

Marc Haroupian
Counsel to Michael Avenatti and Avenatti &
Associates APC

137774123.8                                16

60

December ___, 2017                  PERKINS COIE LLP

                                    _____
                                    Sara L. Chenetz
                                    Counsel to the JFL Parties

December ___, 2017                  SULMEYER KUPETZ LLP APC

                                    _____
                                    Marc Haroupian
                                    Counsel to Michael Avenatti and Avenatti &
                                    Associates APC
                                    MARK HOROUPIAN

# Exhibit A to Settlement Agreement

| Case Name |
|---|
| 1. **Birbrower v. Quorn Foods, Inc.** |
| • Nationwide class action for false advertising |
| 2. **Callaway v. Mercedes Benz USA, Inc.** |
| • California class action concerning defective seat heaters |
| 3. **Authentic Entertainment Properties v. Royal Center et al.** |
| • Breach of Joint Venture Agreement |
| 4. **Weaver v. Southern California Edison, et al.** |
| • Personal injury action |
| • Plaintiff is Jason Frank's cousin |
| 5. **Shine v. Williams Sonoma, Inc.** |
| • California employment class action challenging on-call shift policy |
| 6. **Ward v. Tilly's** |
| • California employment class action challenging on-call shift policy |
| 7. **Deehan v. Gap, Inc.** |
| • California employment class action challenging on-call shift policy |
| 8. **Rasheed v. Gap, Inc.** |
| • California employment class action challenging on-call shift policy |
| 9. **Broadstone v. Pacific Sunwear** |
| • California employment class action challenging on-call shift policy |
| 10. **Broadstone/Billon v. Bath & Body** |
| • California employment class action challenging on-call shift policy |
| 11. **Robinson v. BCBG** |
| • California employment class action challenging on-call shift policy |
| 12. **Lagunas v. Ambercrombie** |
| • California employment class action challenging on-call shift policy |
| 13. **Jiminez (Dylan)** |
| • Unaware of any case by this name |

**14. RFF v. Spound**

- Hourly breach of contract case representing Defendant
- Incorrectly listed on EA's schedule as a plaintiff case

**15. Hannes Kuhn**

**16. Chaffe v. Keller Rohrback**

- Attorney malpractice action

**17. Eldard (Wall) v. Hewlett Packard**

- California employment class action for waiting time penalties

# EXHIBIT B

1    Richard M. Pachulski (CA Bar No. 90073)
   Ira D. Kharasch (CA Bar No. 109084)
2    Robert M. Saunders (CA Bar No. 226172)
   PACHULSKI STANG ZIEHL & JONES LLP
3    10100 Santa Monica Blvd., 13th Floor
   Los Angeles, CA 90067
4    Telephone: 310/277-6910
   Facsimile: 310/201-0760
5    Email: rpachulski@pszjlaw.com
           ikharasch@pszjlaw.com
6            rsaunders@pszjlaw.com

7    Attorneys for Debtor and Debtor in Possession

8               **UNITED STATES BANKRUPTCY COURT**

9      **CENTRAL DISTRICT OF CALIFORNIA - SANTA ANA DIVISION**

| | |
|---|---|
| 10  In re: | Case No. 8:17-bk-11961-CB |
| 11 | Chapter 11 |
| 12  EAGAN AVENATTI, LLP, | **ORDER GRANTING MOTION FOR ORDER APPROVING SETTLEMENT AND DISMISSING CASE** |
| 13                Debtor. | |
| 14 | <u>Hearing:</u><br>Date:    February 28, 2018 |
| 15 | Time:    10:00 a.m.<br>Place:   Courtroom 5D |
| 16 |         411 West Fourth Street<br>        Santa Ana, CA 92701-4393 |
| 17 | |
| 18 | |

19

20       A hearing (the "<u>Hearing</u>") was held on February 28, 2018, at 10:00 a.m. on Debtor's *Motion*

21 *for an Order Approving Settlement and Dismissing Case* filed on January 30, 2018 as Docket # ___

22 (the "<u>Motion</u>"). Appearances were made as noted on the record. Capitalized terms not defined in

23 this order have the meanings ascribed to such terms in the Motion.

24       The Court having read and considered the Motion, the pleadings filed in support of the

25 Motion, having heard statements of counsel at the Hearing, noting no opposition, and having found

26 that notice of the Hearing and Motion was due and proper, and with good cause shown:

27    **IT IS ORDERED:**

28       1.     The Motion is granted.

1

DOCS_LA:311830.4 20328/001

2.      The case is dismissed.

3.      The Settlement Agreement and Releases (attached to Declaration of Michael Avenatti in support of the Motion as Exhibit A) and compromises contained therein (the "Agreement") are approved.

4.      The Debtor is authorized and directed to take all steps necessary to implement and effectuate the Agreement.

5.      Claim 8-1, filed in this case by Jason Frank Law PLC, is allowed in the amount of $10,000,000.00 ("Compromised Claim Amount") and to the extent it asserts a claim for indemnification, contribution and insurance coverage for any claims brought against Jason Frank Law, PLC related to its rendition of services at Eagan Avenatti LLP, including without limitation indemnification for tax liability.

6.      The Clerk of the Court is directed to enter on the Claims Register in this case that Claim 8-1 is allowed in the amount of $10,000,000.00, and thereafter the Clerk of the Court shall dismiss this case.

7.      If Jason Frank Law, PLC timely and fully receives the Settlement Payments set forth in paragraph 3.2 of the Agreement, the Compromised Claim Amount will be deemed satisfied in full on the date set forth in paragraph 3.5 of the Agreement.

8.      Claim 6-1, filed by Jason M. Frank, is disallowed, except it is allowed to the extent it asserts a claim for indemnification, contribution and insurance coverage for any claims brought against Jason M. Frank related to his employment at, or rendition of services at, Eagan Avenatti LLP, including without limitation indemnification for tax liability.

9.      Claim 7-1, filed by Scott Sims, is disallowed, except it is allowed to the extent it asserts a claim for indemnification, contribution and insurance coverage for any claims brought against Scott Sims related to his employment at, or rendition of services at Eagan Avenatti LLP, including without limitation indemnification for tax liability.

10.     Claim 9-1, filed by Andrew Stolper, is disallowed, except to the extent it asserts a claim for indemnification, contribution and insurance coverage for any claims brought against

2

1   Andrew Stolper related to his employment at, or rendition of services at Eagan Avenatti LLP,

2   including without limitation indemnification for tax liability.

3        11.    The Court retains post-dismissal jurisdiction pursuant to LBR 1017-2(f) and as set

4   forth in the Motion.

6                             ###

DOCS_LA:311830.4 20328/001

3

## PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
**10100 Santa Monica Boulevard, 13th Floor, Los Angeles, California 90067**


A true and correct copy of the foregoing document entitled (*specify*): ***DEBTOR'S NOTICE OF MOTION AND MOTION FOR ORDER APPROVING SETTLEMENT AND DISMISSING CASE; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF MICHAEL J. AVENATTI IN SUPPORT*** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. <u>TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)</u>:** Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **<u>January 30, 2018</u>**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page

**2. <u>SERVED BY UNITED STATES MAIL</u>:**
On (*date*) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3. <u>SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL</u>** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) **<u>January 30, 2018</u>**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

**VIA OVERNIGHT DELIVERY**
Honorable Catherine E. Bauer
United States Bankruptcy Court
Central District of California
411 West Fourth Street, Suite 5165
Santa Ana, CA 92701-4593

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| January 30, 2018 | Myra Kulick | /s/ Myra Kulick |
|---|---|---|
| Date | Printed Name | Signature |

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*
DOCS_LA:305992.5 20328/001

**F 9013-3.1.PROOF.SERVICE**

## SERVICE LIST

**Eagan Avenatti, LLP**
**Chapter 11 Case No. 8:17-bk-11961-CB**

**TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF):**

- *Mikel R Bistrow    mikel.bistrow@dinsmore.com, caron.burke@dinsmore.com*
- *Peter W Bowie    peter.bowie@dinsmore.com, caron.burke@dinsmore.com*
- *Christopher Celentino    chris.celentino@dinsmore.com, caron.burke@dinsmore.com*
- *Sara Chenetz    schenetz@perkinscoie.com, dlax@perkinscoie.com;cmallahi@perkinscoie.com*
- *David B Golubchik    dbg@lnbyb.com, dbg@ecf.inforuptcy.com*
- *Michael J Hauser    michael.hauser@usdoj.gov*
- *Mark S Horoupian    mhoroupian@sulmeyerlaw.com,*
  *ppenn@sulmeyerlaw.com;mhoroupian@ecf.inforuptcy.com;dperez@sulmeyerlaw.com;ppenn@ecf.inforuptcy.com*
- *Sheri Kanesaka    sheri.kanesaka@fnf.com, Christine.hipp@fnf.com*
- *Isaac Marcushamer*
- *Malhar S Pagay    mpagay@pszjlaw.com, mpagay@pszjlaw.com*
- *R Gibson Pagter    gibson@ppilawyers.com, ecf@ppilawyers.com;pagterrr51779@notify.bestcase.com*
- *Misty A Perry Isaacson    misty@ppilawyers.com, ecf@ppilawyers.com;perryisaacsonmr51779@notify.bestcase.com*
- *Thomas J Polis    tom@polis-law.com, paralegal@polis-law.com;r59042@notify.bestcase.com*
- *Robert M Saunders    rsaunders@pszjlaw.com, rsaunders@pszjlaw.com*
- *Najah J Shariff    najah.shariff@usdoj.gov, USACAC.criminal@usdoj.gov*
- *David H Stein    dstein@wilentz.com*
- *Michael K Symons    mike@symonsmarkwith.com, mike@symonsmarkwith.com*
- *United States Trustee (SA)    ustpregion16.sa.ecf@usdoj.gov*

*June 2012*
DOCS_LA:305992.5 20328/001

**F 9013-3.1.PROOF.SERVICE**

# EXHIBIT C

## AEP FEE SHARING AGREEMENT, SETTLEMENT AND MUTUAL RELEASE

This Fee Sharing Agreement, Settlement and Mutual Release ("Agreement") is entered into this __ day of December 2017 by and between Eagan Avenatti LLP ("EA"), a limited liability partnership organized in California, on the one hand, and Authentic Entertainment Properties, LLC, a limited liability corporation organized in Nevada ("AEP") and Authentic Entertainment Properties Development, LLC, a limited liability corporation organized in Nevada ("AEPD") (AEP and AEPD are collectively referred to as the "AEP Parties"), on the other hand. EA and the AEP Parties are collectively referred to as the "Parties."

WHEREAS, on or about May 26, 2015, the AEP Parties retained EA to represent them in connection with the matter entitled Authentic Entertainment Properties, LLC et al. v. Royal Center Associates, LLC et al., Case No. A-15-724305-B filed in the District Court of Clark County, Nevada (the "Royal Resort" matter") pursuant to a contingency agreement;

WHEREAS, on or about July 5, 2016, the AEP Parties terminated the contingency agreement with EA and retained the law firm of Frank Sims & Stolper LLP ("FSS") to represent them in the Royal Resort matter;

WHEREAS, on or about July 15, 2016, EA filed a Notice of Attorney's Lien in the Royal Resort matter seeking compensation for its legal services and unreimbursed costs;

WHEREAS, in February 2017, the AEP Parties reached a settlement in the Royal Resort matter pursuant to which the AEP Parties obtained the right to enter into a long-term ground lease of certain property owned by the defendants in the Royal Resort matter if the AEP Parties exercised certain options by various deadlines, or else the AEP Parties would otherwise receive nothing under the settlement (the "Royal Resort Settlement");

WHEREAS, on or about February 8, 2017, the AEP Parties filed a Demand for Arbitration against EA seeking declaratory relief and damages relating to EA's former representation of AEP in the Royal Resort matter (the "AEP/EA Arbitration");

WHEREAS, on or about February 15, 2017, the Royal Resort matter was dismissed with prejudice pursuant to the terms of the Royal Resort Settlement;

WHEREAS, on or about February 28, 2017, EA filed a motion to adjudicate its attorney's lien against AEP in the Royal Resort matter;

WHEREAS, on or about March 1, 2017, an Involuntary Bankruptcy Petition against EA, seeking that EA be a debtor in a Chapter 11 case was filed in the Middle District of Florida, Case No. 6:17-bk-01329-KSJ (the "Bankruptcy Case");

WHEREAS, on or about March 10, 2017, EA consented to entry of Order for Relief in the Bankruptcy Case;

1

WHEREAS, on or about May 16, 2017, the Bankruptcy Case was transferred to the Central District of California, Santa Ana Division, before the Honorable Catherine E. Bauer (the "Bankruptcy Court"), and assigned a new case number 8:17-bk-1191-CB;

WHEREAS, on or about April 12, 2017, EA's motion to adjudicate its attorney's lien against the AEP Parties was denied by the District Court Judge in the Royal Resort matter, and EA subsequently appealed this decision;

WHEREAS, in May 2017, the AEP Parties asserted they had an unsecured claim against EA in the Bankruptcy Case;

WHEREAS, on or about September 12, 2017, the AEP Parties failed to timely exercise their option to proceed with the ground lease provided under the Royal Resort Settlement, and the defendants in the Royal Resort matter terminated the ground lease and the AEP Parties will receive nothing under the Royal Resort Settlement;

WHEREAS, on or about September 13, 2017, EA's appeal in the Royal Resort matter was dismissed based on EA's voluntary withdrawal of its appeal;

WHEREAS, on or about September 18, 2017, the AEP Parties dismissed the AEP/EA Arbitration without prejudice;

WHEREAS, in December 2017, EA entered into a Settlement Agreement with various parties, including FSS, pursuant to which, among other things, EA and FSS agreed that EA would receive fifty percent (50%) of any and all legal fees which would otherwise be paid to FSS or its partner Jason Frank Law, PLC ("JFL") or Jason Frank (collectively, the "FSS Parties") in the future in connection with the Royal Resort matter (the "EA Bankruptcy Settlement");

WHEREAS, pursuant to the terms of the EA Bankruptcy Settlement, EA will be releasing any and all claims it has against the AEP Parties;

WHEREAS, the EA Bankruptcy Settlement is contingent upon the Bankruptcy Court entering orders approving the Settlement (the "Settlement Order") and dismissing the Bankruptcy Case (the "Dismissal Order") and certain other conditions set forth in Paragraph 1.1 of the EA Bankruptcy Settlement; and

WHEREAS, the Parties desire to resolve any and all disputes between them on the terms set forth in the EA Bankruptcy Settlement and herein;

NOW THEREFORE, for and in consideration of the mutual covenants contained herein and for other good and valuable consideration, the sufficiency of which is hereby acknowledged, the Parties agree as follows:

1. **Effective Date of this Agreement**

    1.1.    The effectiveness of the terms and obligations of this Agreement are contingent upon (a) EA filing a motion ("Settlement and Dismissal Motion") with the Bankruptcy Court seeking entry of orders (the "Orders") approving the EA Bankruptcy Settlement and authorizing and directing the Debtor to fully comply with all terms of the EA Bankruptcy Settlement pursuant to Fed. R. Bankr. Pro. 9019 ("Settlement Order"), and Dismissing the Bankruptcy Case, pursuant to Bankruptcy Code Section 1112(b) ("Dismissal Order"), (b) the Bankruptcy Case being dismissed within sixteen (16) calendar days after entry of the Dismissal Order, and (c) if a stay of the Settlement Order or Dismissal Order has been entered pursuant to Rule 8007 of the Federal Rules of Bankruptcy Procedure, a Termination Notice, as defined in Paragraph 1.5 of the EA Bankruptcy Settlement, has not be provided.

    1.2.    In the event this Agreement does not become effective pursuant to the terms of Paragraph 1.1 above, the Parties shall be returned to the *status quo ante* prior to their execution of this Agreement, and the Agreement shall be deemed null and void, and neither this Agreement, its execution nor any statements contained therein may be used in any subsequent proceedings in any court or arbitration.

2. **Fee Sharing Agreement.**

    2.1.    In the event that the AEP Parties pay or provide, directly or indirectly, any compensation of any kind, including, *inter alia* legal fees, property interests, or any other business arrangements, to one or more of the FSS Parties in connection with the Royal Resort matter and/or the Royal Resort Settlement, then EA will be entitled to receive fifty percent (50%) of that compensation directly from the AEP Parties, or their successors. The AEP Parties are required to provide such compensation to the FSS Parties and EA at the same time to the extent reasonably possible.

3. **Resolution of EA's Asserted Liens and Right to Attorneys' Fees and Costs in the Matters.**

    3.1.    Within sixteen (16) calendar days of entry of the Dismissal Order in the Bankruptcy Case, and provided no stay of the Settlement Order or Dismissal Order having been issued pursuant to Rule 8007 of the Federal Rules of Bankruptcy Procedure, EA will withdraw all purported liens asserted against the AEP Parties and in the Royal Resort matter and will forever waive and forego, with prejudice and finality, any present or future claims for attorneys' fees, costs, expenses, damages, or any other compensation or remedies arising out of or relating to EA's relationship with AEP and the Royal Resort matter.

4.      **Releases**.

4.1.    **Release of EA by the AEP Parties**.  Effective upon the latest of (a) entry of Settlement Order, (b) entry of the Dismissal Order, and (c) dismissal of the Bankruptcy Case, and provided no stay of the Settlement Order or Dismissal Order having been issued pursuant to Rule 8007 of the Federal Rules of Bankruptcy Procedure, and in consideration of the terms of this Agreement and other good and valuable consideration, the AEP Parties on their own behalf and on behalf of each and all of their respective legal predecessors, successors, assignees, attorneys, agents, partners, owners, employees, heirs, parents, children, spouses, and related organizations hereby irrevocably and unconditionally release, and fully and forever discharge, absolve, and covenant not to sue EA, and every one of their respective partners, officers, directors, owners, agents, employees, companies, parents, subsidiaries, divisions, affiliates, attorneys, trustees, administrators, insurers, fiduciaries, executors, representatives, predecessors, successors, assigns, related organizations, heirs, parents, children and spouses from and for any and all claims, causes of action, liabilities, damages, legal or administrative relief, of any basis or source, whether known or unknown, that were, have been or could have been asserted now, in the past, or in the future, including, but not limited to, any and all claims raised in the AEP / EA Arbitration, and/or any and all claims arising out of or relating to EA's representation of the AEP Parties, the AEP Parties' termination of EA, and any actions taken by EA that directly or indirectly affected the AEP Parties.

4.2.    **Release of AEP Parties by EA**.  Effective upon the latest of (a) entry of Settlement Order, (b) entry of the Dismissal Order, and (c) dismissal of the Bankruptcy Case, and provided no stay of the Settlement Order or Dismissal Order having been issued pursuant to Rule 8007 of the Federal Rules of Bankruptcy Procedure, and in consideration of the terms of this Agreement and other good and valuable consideration, EA on its own behalf and on behalf of each and all of their respective legal predecessors, successors, assignees, attorneys, agents, partners, owners, employees, heirs, parents, children, spouses, and related organizations hereby irrevocably and unconditionally release, and fully and forever discharge, absolve, and covenant not to sue the AEP Parties, and every one of their respective partners, officers, directors, owners, agents, employees, companies, parents, subsidiaries, divisions, affiliates, attorneys, trustees, administrators, insurers, fiduciaries, executors, representatives, predecessors, successors, assigns, related organizations, heirs, parents, children and spouses from and for any and all claims, causes of action, liabilities, damages, legal or administrative relief, of any basis or source, whether known or unknown, that were, have been or could have been asserted now, in the past, or in the future, including, but not limited to, any and all claims raised in the AEP / EA Arbitration, and/or any and all claims arising out of or relating to EA's representation of the AEP Parties, the AEP Parties' termination of EA, and any actions taken by the AEP Parties that directly or indirectly affected EA.

5.      **Waiver of Civil Code § 1542**.  Each of the Parties has read and understood the following language contained in Section 1542 of the California Civil Code:

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OF HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

To the extent that Section 1542 is applicable, each of the Parties hereto expressly waives all rights, if any, that they may have under this statute.

6.    **No Admission of Liability**.   This Agreement is made in settlement of claims and allegations which are denied, disputed, and contested.  Neither this Agreement nor anything contained in this Agreement shall be construed as an admission of any fact, issue, liability, or responsibility by any Party hereto to any other Party hereto, all of which are expressly denied.

7.    **Representations and Warranties.**  The Parties hereto represent and warrant that each has read and understood and has received independent legal advice with respect to the advisability of making this Agreement, and/or has had the opportunity to obtain such legal advice and has knowingly entered into this Agreement without taking advantage of the opportunity to obtain such advice.  Each Party has made such investigation of the facts pertaining to this Agreement and of all other matters pertaining hereto as they deem necessary.  The Parties hereto represent and warrant that each signatory hereto has the full right and authority to enter into this Agreement and bind the Party on whose behalf he, she, or it has executed this Agreement.

8.    **Further Assurances.**  Each Party hereto agrees to cooperate fully and to execute any and all supplementary documents and to take all additional actions that may be necessary or appropriate to give full force and effect to the basic terms and intent of this Agreement and which are not inconsistent with its terms and intent.

9.    **Headings.**  The various headings in this Agreement are inserted for convenience only, and shall not be deemed a part of or in any manner affect this Agreement or any provision hereof.

10.   **Governing Law**.  This Agreement shall be governed and construed in accordance with the substantive laws of the State of California and the United States Bankruptcy Code.  Respective counsel for each Party hereto has participated in the drafting of, read, and approved the language of this Agreement.  The language of this Agreement shall be construed as a whole according to its fair meaning, and not strictly for or against any of the Parties hereto.

11.   **Conflicts Between This Agreement and the EA Bankruptcy Settlement Agreement.** To the extent there any conflicts between the terms of this Agreement and the EA Bankruptcy Settlement Agreement, the EA Bankruptcy Settlement Agreement will control.

5

12.   **Dispute Resolution Procedure.**  Any disputes regarding this Agreement, shall be first submitted to the Honorable Louis Meisinger to resolve in mediation.  If the Parties are unable to resolve the dispute, then 10 days after the mediation, they will submit the claim to binding arbitration before ADR Services, Inc. in Los Angeles, California to be resolved employing their rules and procedures for arbitration.

13.   **Waiver/Severability.**  The Parties agree that no waiver by any Party of any particular provision or right under this Agreement shall be deemed to be a waiver of any other provision or right herein.  The Parties further agree that each provision or term of this Agreement is intended to be severable from the others so that if any particular provision or term hereof is or determined to be illegal or invalid for any reason whatsoever, such illegality or invalidity shall not affect the legality or validity of the remaining provisions and terms hereof.

14.   **Attorneys' Fees**.  The Parties agree that should any relief be brought by any Party to enforce any provision or right under this Agreement, the prevailing party shall be entitled to recover, in addition to any other relief, reasonable attorneys' fees and costs incurred therein.

15.   **Entire Agreement.**  This Agreement and the EA Bankruptcy Settlement Agreement constitute the sole and entire agreement and understanding between the Parties concerning the subject matter hereof and supersedes all prior agreements and understandings between the Parties hereto with the exception of (a) the Guaranty Agreement that will be entered into between Michael Avenatti and JFL as further described in the EA Bankruptcy Settlement Agreement.  Each of the Parties hereto acknowledge to each of the other Parties that no other Party or any agent or attorney of any Party has made any promise, representation or warranty whatsoever, express or implied, written or oral, not contained herein concerning the subject matter hereof to induce him, her, or it to execute this Agreement, and each of the Parties hereto acknowledges that he, she, or it has not executed this Agreement in reliance on any promise, representation or warranty not expressly contained herein.  No person has any authority to make any representation or promise on behalf of any Party that is not set forth herein.  This Agreement may be modified only with a written instrument duly executed by each of the Parties hereto.

16.   **Binding Agreement.**  This Agreement shall bind and shall inure to the benefit of successors and assigns of each Party.  With respect to the individual Parties, this Agreement shall also bind and inure to the benefit of his or her heirs and assigns.  With respect to the entity Parties, this Agreement shall also bind and inure to the benefit of any parent, affiliate, predecessor-in-interest, successor-in-interest, or assign.

17.   **Notice Provision**.  Any and all notices required by this Agreement shall be mailed and emailed in writing to the following:

17.1.  **To the EA Parties.**  To Michael Avenatti & Michael Eagan, Eagan Avenatti, LLP, 520 Newport Center Drive, Ste. 1400, Newport Beach, CA 92660, mavenatti@eaganavenatti.com.

17.2.  **To the FSS Parties.**  To Jason Frank, Scott Sims, & Andrew Stolper, Frank Sims & Stolper LLP, 19800 McArthur Blvd., Suite 855, Irvine, California 92612, jfrank@lawfss.com

17.3.  To the AEP Parties.  To Steven T. Graham, Snell & Wilmer, LLP, 600 Anton Blvd. #1400, Costa Mesa, California 92626-7689, sgraham@swlaw.com.

18.  **Execution/Counterparts.**  This Agreement may be executed in counterparts, and a facsimile or PDF signature shall have the same force and effect as an original signature penned in ink.  When each of the Parties hereto has signed and delivered at least one such counterpart to all other Parties or their counsel, each counterpart shall be deemed an original, and when taken together with other signed counterparts, shall constitute one fully executed agreement which shall be binding upon and effective as to all Parties.

IN WITNESS WHEREOF, the Parties hereto have caused this Agreement to be executed as of the day and year indicated below.

December 14 2017

AUTHENTIC ENTERTAINMENT PROPERTIES, LLC

Robert Coffman
President

December 14 2017

AUTHENTIC ENTERTAINMENT PROPERTIES DEVELOPMENT, LLC

Robert Coffman
President

December 12, 2017

EAGAN AVENATTI LLP

Michael J. Avenatti
Its Managing Partner

77

APPROVED AS TO FORM:

February 2, 2018
~~December __, 2017~~

PACHULSKI STANG ZIEHL & JONES LLP

_____
~~Richard M. Pachulski~~ Robert M. Saunders
Counsel to Eagan Avenatti LLP

December __, 2017

PERKINS COIE LLP

_____
Sara L. Chenetz
Counsel to the JFL Parties

December __, 2017

SULMEYER KUPETZ LLP

_____
Marc Haroupian
Counsel to Michael Avenatti and Avenatti &
Associates APC

8

APPROVED AS TO FORM:

December ___, 2017                          PACHULSKI STANG ZIEHL & JONES LLP

_____
                                            Richard M. Pachulski
                                            Counsel to Eagan Avenatti LLP

December 12, 2017                           PERKINS COIE LLP

_____
                                            Sara L. Chenetz
                                            Counsel to the LFL Parties

December ___, 2017                          SULMEYER KUPETZ, LLP APC
January 31, 2018

_____
                                            Marc Haroupian
                                            Counsel to Michael Avenatti and Avenatti &
                                            Associates APC
                                            MARK S. HOROUPIAN

# EXHIBIT D

GUARANTY

THIS GUARANTY ("Guaranty"), dated as of the 12th day of December, 2017, is made by the undersigned Michael J. Avenatti ("Guarantor"), an individual resident in California, in favor of Jason Frank Law, PLC, a California professional law corporation ("JFL").

JFL and Eagan Avenatti LLP ("EA") (among others) are parties to a certain Settlement Agreement and Releases, dated as of the 12th day of December 2017 (as may be amended, restated, modified, renewed or extended from time to time, the "Agreement"). To induce JFL to enter into the Agreement and comply with its terms, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Guarantor has agreed to guaranty EA's obligation to timely pay $4,850,000.00 to JFL under Section 3.2 of the Agreement (the "Settlement Payments"). Guarantor acknowledges that he will derive substantial direct and indirect benefits from JFL's execution and compliance with the Agreement and from the compromises contained in the Agreement.

To induce JFL to enter into and agree to the payment and other terms set forth in the Agreement, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Guarantor hereby agrees as follows:

1.    *Guaranty*. (a) Guarantor hereby unconditionally and irrevocably guarantees to JFL, its successors, assigns, endorsees and transferees, the full and prompt payment when due of the Settlement Payments provided for in Section 3.2 of the Agreement in the total amount of $4,850,000.00. Guarantor further agrees that if EA shall fail to pay one or both of the Settlement Payments when they are due under Section 3.2 of the Agreement, Guarantor shall promptly pay such unpaid portion of the Settlement Payments, without demand or notice.

(b) Guarantor represents and warrants to JFL as follows:

(i)     Guarantor is a natural person residing in California.

(ii)    Guarantor has the capacity to execute, deliver, and perform under this Guaranty and the Agreement.

(iii)   This Guaranty is the legally valid and binding obligation of Guarantor, enforceable against Guarantor in accordance with its terms except as such enforcement may be delayed or restricted after the commencement by or against EA of any action, case or proceeding involving insolvency, bankruptcy, reorganization, receivership, arrangement, adjustment, composition, assignment for the benefit of creditors, liquidation, winding up or dissolution under any applicable laws with respect thereto (an "Insolvency Proceeding") or laws and principles of equity affecting the rights and remedies of creditors generally.

(iv)    The execution and delivery of this Guaranty and the Agreement, and the performance of the requirements evidenced by this Guaranty and the Agreement, will not violate any law applicable to Guarantor or constitute a default or breach of any contract to which Guarantor is a party or by which its properties are bound.

(v)     Guarantor is not insolvent and is not the subject of any Insolvency Proceedings.

SANFRAN 69769 v1 (2K)

137930771.2

2.      *Liability of Guarantor.*  The liability of Guarantor under this Guaranty shall be irrevocable, absolute, independent and unconditional, and shall not be affected by any circumstance which might constitute a discharge of a surety or guarantor other than the indefeasible payment and performance in full of its commitments hereunder.  In furtherance of the foregoing and without limiting the generality thereof, Guarantor agrees as follows: (i) Guarantor's liability hereunder shall be the immediate, direct, and primary obligation of Guarantor and shall not be contingent upon JFL's exercise or enforcement of any remedy it may have against EA or any other person or entity ("Person"); (ii) this Guaranty is a guaranty of payment when due and not of collectability; (iii) JFL may enforce this Guaranty upon the occurrence of a default notwithstanding any dispute between JFL and EA with respect to the existence of such default, without limiting any defenses that Guarantor otherwise has; (iv) payment of a portion, but not all, of the Settlement Payments shall in no way limit, affect, modify or abridge Guarantor's liability for any portion of the Settlement Payments remaining unsatisfied; and (v) Guarantor's liability with respect to the Settlement Payments shall remain in full force and effect without regard to, and shall not be impaired or affected by, nor shall Guarantor be exonerated or discharged by, (A) any Insolvency Proceeding with respect to EA, Guarantor, any other guarantor or any other Person; (B) any limitation, discharge, or cessation of the liability of EA, any other guarantor or any other Person for the payment of the Settlement Payments due to any statute, regulation or rule of law, or any invalidity or unenforceability in whole or in part; (C) any merger, acquisition, consolidation or change in structure of EA, Guarantor or any other Person, or any sale, lease, transfer or other disposition of any or all of the assets or shares of EA, Guarantor, any other guarantor or other Person; (D) any assignment or other transfer, in whole or in part, of JFL's interests in and rights under this Guaranty, including, without limitation, JFL's right to receive payment of the Settlement Payments; (E) any claim, defense, counterclaim or setoff, other than that of prior performance, that EA, Guarantor, any other guarantor or other Person may have or assert, including, without limitation, any defense of incapacity or lack of corporate or other authority to execute or deliver this Guaranty, the Agreement or any other document related thereto; (F) any direction of application of payment to EA, Guarantor, any other guarantor or other Person; (G) any modification, agreement or stipulation between EA and JFL or any other parties to the Agreement, or their respective successors, assigns, transferees, endorsees, heirs, executors, personal representatives and legatees, with respect to the Agreement or the requirements therein or herein; and (H) JFL's vote, claim, distribution, election, acceptance, action or inaction in any Insolvency Proceeding. Guarantor's liability hereunder is absolute and unconditional irrespective of the value, genuineness, validity or enforceability of the Agreement or any other related agreement.

3.      *Consents.*  Guarantor hereby consents and agrees that, without notice to or further assent from Guarantor:  (i)  JFL may request and accept other guaranties of payment of the Settlement Payments and may, from time to time, in whole or in part, surrender, release, subordinate, modify, waive, rescind, compromise or extend any such guaranty and may permit or consent to any such action or the result of any such action and JFL shall not be liable to Guarantor for any failure to collect or enforce against any other party liable for the Settlement Payments; and (ii) JFL may exercise, or waive or otherwise refrain from exercising, any other right, remedy, power or privilege granted by the Agreement or any document related thereto, or otherwise available to JFL, with respect to the timely and complete payment of the Settlement Payments, even if the exercise of such right, remedy, power or privilege affects or eliminates any

right of subrogation or any other right of Guarantor against EA; all as JFL may deem advisable, and all without impairing, abridging, releasing or affecting this Guaranty.

4. *Waivers*. (a) Guarantor waives and agrees not to assert: (i) any right to require JFL to proceed against EA, any other guarantor or any other Person; (ii) the defense of a statute of limitations in any action hereunder or for the collection or performance of the payment of the Settlement Payments; (iii) any defense arising by reason of any lack of corporate or other authority or any other defense of EA, Guarantor or any other Person; (iv) any defense based upon JFL's errors or omissions in the administration of its obligations under the Agreement and/or this Guaranty; (v) any rights to set-offs and counterclaims; (vi) without limiting the generality of the foregoing, to the fullest extent permitted by law, any other defenses or benefits that may be derived from or afforded by applicable law limiting the liability of or exonerating guarantors or sureties, or which may conflict with the terms of this Guaranty; (vi) any and all rights and defenses arising out of an election of remedies by the creditor, even though that election of remedies, such as a nonjudicial foreclosure with respect to security for payment of the Settlement Payments, has destroyed the Guarantor's rights of subrogation and reimbursement against the principal by the operation of Section 580(d) of the California Code of Civil Procedure or otherwise; and (vii) without limiting the generality of the foregoing, to the fullest extent permitted by law, any other defenses or benefits that may be derived from or afforded by applicable law limiting the liability of or exonerating guarantors or sureties, or which may conflict with the terms of this Guaranty, including, without limitation, any and all benefits that otherwise might be available to Guarantor under California Civil Code §§1432, 2809, 2810, 2815, 2819, 2839, 2845, 2848, 2849, 2850, 2899 and 3433 and California Code of Civil Procedure §§580a, 580b, 580d and 726. (b) Guarantor waives any and all notice of the acceptance of this Guaranty, and any and all notice of the creation, renewal, modification, extension or accrual of the payment of the Settlement Payments, or the reliance by JFL upon this Guaranty, or the exercise of any right, power or privilege hereunder. The obligations created under this Guaranty (the "Obligations") shall conclusively be deemed to have been created, contracted, incurred and permitted to exist in reliance upon this Guaranty. Guarantor waives promptness, diligence, presentment, protest, demand for payment, notice of default, dishonor or nonpayment and all other notices whatsoever to or upon EA, Guarantor or any other Person with respect to the Obligations created hereunder. (c) The Obligations of Guarantor hereunder are independent of and separate from the requirements and obligations of EA under the Agreement and any other guarantor and upon the occurrence and during the continuance of any default, a separate action or actions may be brought against Guarantor, whether or not EA or any such other guarantor is joined therein or a separate action or actions are brought against EA or any such other guarantor. (d) Guarantor shall not have any right to require JFL to obtain or disclose any information with respect to (i) the financial condition or character of EA or the ability of EA to pay and perform under the Agreement; (ii) the Obligations under this Guaranty; (iii) any collateral or other security for any or all of the Settlement Payments; (iv) the existence or nonexistence of any other guarantees for any or all of the Settlement Payments; (v) any action or inaction on the part of JFL or any other Person; or (vi) any other matter, fact or occurrence whatsoever.

5. *Subrogation*. Until the Obligations shall be satisfied in full, Guarantor shall not have, and shall not directly or indirectly exercise, (i) any rights that it may acquire by way of subrogation under this Guaranty, by any payment hereunder or otherwise, (ii) any rights of

SANFRAN 69769 v1 (2K)

-3-

137930771.2

contribution, indemnification, reimbursement or similar suretyship claims arising out of this Guaranty, or (iii) any other right which it might otherwise have or acquire (in any way whatsoever) which could entitle it at any time to share or participate in any right, remedy or security of JFL as against EA or other guarantors, whether in connection with this Guaranty or otherwise.

6.     *Continuing Guaranty*.   Guarantor agrees that this Guaranty is a continuing guaranty relating to the Settlement Payments, and Guarantor expressly acknowledges that this Guaranty shall remain in full force and effect notwithstanding that there may be periods in which no Settlement Payments are owed.   This Guaranty shall continue to be effective or shall be reinstated and revived, as the case may be, if, for any reason, any payment of the Settlement Payments by or on behalf of EA shall be rescinded, avoided, or must otherwise be restored by JFL, whether as a result of any Insolvency Proceeding or otherwise.   To the extent any Settlement Payment is rescinded, recovered, avoided or restored, the Obligations shall be revived in full force and effect without reduction or discharge for such payment.

7.     *Payments*.   Guarantor hereby agrees, in furtherance of the foregoing provisions of this Guaranty and not in limitation of any other right which JFL or any other Person may have against Guarantor by virtue hereof, upon the failure of EA to pay the Settlement Payments when and as the same shall become due, Guarantor shall forthwith pay, or cause to be paid, in cash, to JFL an amount equal to the amount of the Settlement Payments then due (including interest which, but for the filing of a petition in any Insolvency Proceeding with respect to EA, would have accrued on such Settlement Payments, whether or not a claim is allowed against EA for such interest in any such Insolvency Proceeding). Guarantor shall make each payment hereunder, without deduction (whether for taxes or otherwise), set-off or counterclaim, on the day when due in immediately available funds, and in U.S. dollars.

8.     *Notices*.   All notices and other communications provided for hereunder shall, unless otherwise stated herein, be in writing (including by email) and shall be mailed, sent or delivered (i) if to JFL, at Frank Sims & Stolper LLP, 19800 McArthur Blvd., Suite 855, Irvine, California 92612,, (ii) if to Guarantor, at or to its address or, or email address, set forth below its name on the signature page below, or at or to such other address or email address, as such party shall have designated in a written notice to the other party.   All such notices and communications shall be effective upon delivery, if sent by email, and effective upon receipt, if sent by another method.

9.     *No Waiver*.   No failure on the part of JFL to exercise, and no delay in exercising, any right, remedy, power or privilege hereunder shall operate as a waiver thereof, nor shall any single or partial exercise of any such right, remedy, power or privilege preclude any other or further exercise thereof or the exercise of any other right, remedy, power or privilege.   The rights and remedies under this Guaranty are cumulative and not exclusive of any rights, remedies, powers and privileges that may otherwise be available to JFL.

10.     *Costs and Expenses*.   The Parties agree that should any relief be brought by any Party to enforce any provision or right under this Guaranty, the prevailing party shall be entitled to recover, in addition to any other relief, reasonable attorneys' fees and costs incurred therein.

SANFRAN 69769 v1 (2K)

-4-

137930771.2

11.     *Binding Effect; Entire Agreement; Amendments.*  This Guaranty shall be binding upon Guarantor and his successors, assigns, personal representatives, executors, heirs and legatees, and inure to the benefit of and be enforceable by JFL and its successors, endorsees, transferees and assigns; provided that Guarantor shall not have the right to assign or transfer its rights or Obligations hereunder, in whole or part, without the prior written consent of JFL.  This Guaranty constitutes the entire agreement of Guarantor with respect to the matters set forth herein and supersedes any prior agreements, commitments, discussions and understandings, oral or written, with respect thereto, except as set forth in the Agreement.  Other than as stated in Paragraph 17 hereof, there are no conditions to the full effectiveness of this Guaranty.  This Guaranty may not be amended except by a writing signed by Guarantor and JFL.  No waiver of any rights of JFL or Guarantor under any provision of this Guaranty or consent to any departure by Guarantor therefrom shall be effective unless in writing and signed by JFL and Guarantor.  Any such amendment, waiver or consent shall be effective only in the specific instance and for the specific purpose for which given.

12.     *No Discharge in the Event of Guarantor or EA Bankruptcy.*  It is the intention of JFL and Guarantor that Guarantor's payment obligations under this Guaranty shall be non-dischargeable, under 11 U.S.C. Section 523(b), in the event Guarantor becomes a debtor in a bankruptcy case while the Settlement Payments remain outstanding and thereafter to the extent any party in (1) Guarantor's bankruptcy case, or (2) a subsequent bankruptcy case or similar proceeding in which EA is the debtor or has a similar role seeks to recover all or any portion of the Settlement Payments.

13.     *Knowing and Explicit Waivers.*  Guarantor and JFL acknowledge that they have either obtained the advice of legal counsel or have had the opportunity to obtain such advice in connection with the terms and provisions of this Guaranty.  Guarantor acknowledges and agrees that each of the waivers and consents set forth herein are made with full knowledge of their significance and consequences.  Additionally, Guarantor acknowledges and agrees that by executing this Guaranty, it is waiving certain rights, benefits, protections and defenses to which it may otherwise be entitled under applicable law, including, without limitation, under the provisions of the California Civil Code and California Code of Civil Procedure referred to in Section 4, and that all such waivers herein are explicit, knowing waivers.  Guarantor further acknowledges and agrees that JFL is relying on such waivers in connection with execution of the Agreement and this Guaranty, and that such waivers are a material part of the consideration which JFL is receiving.

14.     *Severability.*  Whenever possible, each provision of the Guaranty shall be interpreted in such manner as to be effective and valid under all applicable laws and regulations.  If, however, any provision of this Guaranty shall be prohibited by or invalid under any such law or regulation, it shall be deemed modified to conform to the minimum requirements of such law or regulation, or, if for any reason it is not deemed so modified, it shall be ineffective and invalid only to the extent of such prohibition or invalidity without affecting the remaining provisions of this Guaranty.

15.     *Law; Submission to Jurisdiction.*  This Guaranty shall be governed by and construed in accordance with California law.  Guarantor hereby (i) submits to the non-exclusive jurisdiction of the courts of the State of California and the federal courts of the United States

SANFRAN 69769 v1 (2K)

137930771.2

sitting in the State of California for the purpose of any action or proceeding arising out of or relating to this Guaranty, (ii) agrees that all claims in respect of any such action or proceeding may be heard and determined in such courts, (iii) irrevocably waives (to the extent permitted by applicable law) any objection which it now or hereafter may have to the laying of venue of any such action or proceeding brought in any of the foregoing courts, and any objection on the ground that any such action or proceeding in any such court has been brought in an inconvenient forum, and (iv) agrees that a final judgment in any such action or proceeding shall be conclusive and may be enforced in other jurisdictions by suit on the judgment or in any other manner permitted by law.

16.    *JURY TRIAL WAIVER.*  TO THE EXTENT PERMITTED UNDER APPLICABLE LAW, JFL AND GUARANTOR HEREBY WAIVE THEIR RESPECTIVE RIGHTS TO A JURY TRIAL OF ANY CLAIM OR CAUSE OF ACTION BASED UPON OR ARISING OUT OF THIS GUARANTY OR ANY DEALINGS BETWEEN THE PARTIES RELATING TO THIS GUARANTY.  JFL AND THE GUARANTOR ACKNOWLEDGE THAT THIS WAIVER IS A MATERIAL INDUCEMENT TO ENTER INTO THIS GUARANTY, THAT EACH HAS ALREADY RELIED ON THE WAIVER IN ENTERING INTO THIS GUARANTY AND THAT EACH WILL CONTINUE TO RELY ON THE WAIVER IN ITS RELATED FUTURE DEALINGS.  JFL AND THE GUARANTOR WARRANT AND REPRESENT THAT EACH KNOWINGLY AND VOLUNTARILY WAIVES ITS JURY TRIAL RIGHTS TO THE EXTENT PERMITTED UNDER APPLICABLE LAW FOLLOWING CONSULTATION WITH LEGAL COUNSEL.

17.    *Contingencies to Effectiveness of Guaranty.*  This Guaranty and its terms and Obligations shall not become effective until each of the conditions set forth in paragraph 1.1 of the Agreement has occurred.

18.    *Married Persons.*  Any married person who signs this Guaranty as the Guarantor hereby expressly agrees that recourse may be had against his or her separate and community property for all his or her obligations under this Guaranty.

IN WITNESS WHEREOF, Guarantor has executed and delivered this Guaranty, as of the date first above written.

MICHAEL J. AVENATTI, Guarantor

Address: 520 Newport Center Drive, Suite 1400
*Newport Beach, CA 92660*

Email:  mavenatti@eaganavenatti.com