Scott H. Sims, State Bar No. 234148
Andrew D. Stolper, State Bar No. 205462
FRANK SIMS & STOLPER LLP
19800 MacArthur Boulevard, Suite 855
Irvine, California 92612,
Telephone:   (949) 201-2400
Facsimile:    (949) 201-2401
astolper@lawfss.com
ssims@lawfss.com

Attorneys for Judgment Creditor
JASON FRANK LAW, PLC

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re<br><br>EAGAN AVENATTI, LLP,<br><br>                Debtor. | Case No. 8:18-CV-01644-VAP-KES<br><br>**STATUS REPORT RE: MOTION FOR A PROTECTIVE ORDER; DECLARATION OF JASON M. FRANK IN SUPPORT THEREOF**<br><br>Date:       October 10, 2018<br>Time:      10:00 a.m.<br>Courtroom:  6D |

Pursuant to this Court's Order Granting Jason Frank Law, PLC's Motion to Set Hearing Date on Judgment Debtor's Motion for Protective Order (Dkt. 23) ("Order"), Jason Frank Law, PLC ("JFL") hereby files the requested Status Report concerning its subpoena for financial records ("Subpoena") served on Michael Avenatti ("Avenatti") in connection the Order to Appear for Judgment Debtor Exam ("ORAP").

### A.   Avenatti Has Not Produced Any Documents in Response to the Subpoena and Did Not Meet-and-Confer with JFL.

This Court ordered the Parties to meet-and-confer about the disputed document requests by November 14, 2018. (Order at 3.) JFL and its counsel sent numerous requests to Avenatti to meet-and-confer on the following dates: October 30, November 7, November 13 and November 14. (Declaration of Jason M. Frank ("Frank Decl."), ¶¶ 3-4, Exs. A-D.) Avenatti ignored these requests until the last day, November 14, at which time he responded he would be available to speak at 4:00 p.m. (Id., Ex. E.) However, when JFL and its counsel called Avenatti at his firm and on his cell phone at that time, Avenatti did not answer. (Id. ¶ 5.) He still has not responded to further email requests to meet and confer. (Id., ¶ 5, Ex. F.)

To date, Avenatti has not produced any documents in response to the Subpoena, nor has he offered to produce any documents. (Frank Decl., ¶ 6.)

### B.   Significant Events Since the Last Hearing.

#### 1.   The California Superior Court Granted JFL's Motion for Summary Judgment against Avenatti in the amount of $4.85 Million.

On October 22, 2018, the California Superior Court for the County Los Angeles granted JFL's Motion for Summary Judgment against Avenatti personally in the amount of $4.85 Million, plus interest and attorneys fees. (Frank Decl., ¶ 7.) The judgment was based on Avenatti's failure to honor his personal guaranty (the "Guaranty") in the event his firm, Eagan Avenatti LLP ("EA") defaulted on the Settlement. (Id.)

## 2. California Bank & Trust Produced Partial Bank Records for EA in response to JFL Subpoena.

Due to Avenatti's failure to honor the Subpoena, JFL served a separate subpoena on California Bank & Trust ("CBT"), which is EA's primary bank. (Frank Decl., ¶ 8.) On or about October 17, 2018, CBT produced EA's bank records for the period of January 2013 through September 28, 2018. (Id.) The production included all EA bank accounts at CBT, except EA's client-trust account (the "IOLTA" account). (Id.)

The production revealed that Avenatti has funneled literally <u>tens of millions of dollars</u> from EA to various corporate entities owned and controlled by Avenatti. (Frank Decl., ¶ 9.) For example, during the aforementioned period, there are approximately 405 transactions where EA collectively transferred over **<u>$21.4 Million</u>** to Avenatti & Associates, APC and approximately 98 transactions where EA collectively transferred over **<u>$8.6 Million</u>** to Global Baristas – a coffee company owned by Avenatti. (Id.) There are also numerous transactions with other Avenatti owned companies, such as Passport 420, LLC (through which Avenatti owns his private airplane) and GB Autosport LLC (Avenatti's racing team). (Id.)

While CBT's production did not include bank records for EA's IOLTA account, the produced bank statements contain information about transfers between EA's operating accounts and the IOLTA account. (Frank Decl., ¶ 10.) These transfers provide further evidence that EA is likely using the IOLTA account to unlawfully shield its money from a judgment levy by keeping the money in the IOLTA account until it needs the money to pay expenses or funnel it to an Avenatti entity. (See, e.g. <u>In re Stewart</u> 2008 WL 8462965 at *7 (9th Cir. BAP Jan. 14, 2008); <u>In re Matter of Oxman</u>, 2012 WL 7828358 (Review Dept. State Bar Ct. of CA. Jan. 13, 2012).) For example, after the Bankruptcy Court dismissed the bankruptcy case on March 14, 2018, there are approximately 73 transactions where EA transferred money from the IOLTA account to EA's operating account totaling over **<u>$1.5 Million</u>**. (Frank Decl., ¶ 10.) This is apparently how a firm with virtually no money in its operating accounts is able to fund hundreds of thousands of dollars in expenses each month. (Id.) And by keeping the money stashed away in the IOLTA account,

rather than transferring it to EA, Avenatti is able to prevent JFL from levying on these amounts as a judgment creditor.

### 3. EA Was Evicted from its Offices.

It is JFL's understanding that EA has been evicted from its current premises located at 520 Newport Center Drive, Newport Beach, California. JFL is not aware if EA has moved out of the premises or where its new office(s) will be located.

### C. Remaining Disputes at Issue.

Given that Avenatti failed to meet-and-confer or offer to produce any documents, the issues in dispute have not significantly changed since the last hearing. JFL previously agreed to narrow its requests in the manner reflected in the "Report of Judgment Creditor Re Efforts to Meet and Confer Re: Eagan Avenatti LLP's Motion for a Protective Order." (Dkt. 6. Ex. L.) This offer was without prejudice to JFL's right to later seek the production of such documents.

JFL is prepared to further narrow its requests in the following manner.

#### 1. Bank Statements.

JFL will agree Avenatti does not need to produce EA's bank records for its operating and checking accounts at California Bank & Trust ("CBT"), given that they were already produced by CBT. Avenatti, however, should be ordered to produce the bank records for the IOLTA account at CBT for the period January 1, 2013 to the present. Avenatti should further be ordered to produce EA's bank statements at all other banking institutions from January 1, 2013 to the present. Further, Avenatti should be ordered to produce the bank records for any entity owned or controlled by Avenatti during that time period that received money from EA or sent money to EA, including but not limited to Avenatti & Associates, APC, Global Baristas USA, LLC, Global Baristas, LLC, Doppio, Inc., GB Autosport LLC, Passport 420 LLC and Michael Avenatti, Esq.

#### 2. EA Financial Statements.

Avenatti should be ordered to produce "all financial statements prepared by EA or on its behalf, from January 1, 2013 to the present." This should include EA's profit and loss statements and balance sheets. This should also include the "ledgers" that Avenatti testified EA maintains to

keep track of amounts "owed" to his affiliated entities, such as the alleged "loans" from Avenatti or his entities, or hours worked by EA employees for his other entities.

### 3. **EA Lease Agreement.**

JFL will agree to narrow this request so that it only requires the production of EA's lease agreements in effect on or after March 15, 2018, with the amendments and any personal or corporate guaranties, as well as any uncured default notices.

### 4. **EA Partnership Agreement and Related Documents.**

JFL will agree to narrow this request so that it only requires the production of EA's partnership agreements(s) and amendments, as well as the documents relating to Michael Eagan's withdrawal from the partnership, including but not limited to any agreements related thereto (such as distribution or indemnification agreements) and communications concerning Eagan's withdrawal.

### 5. **EA's Assets.**

JFL will agree that Avenatti can comply with this request by creating a document identifying EA's current assets, including but not limited to, interests in real estate, personal property, intellectual property, accounts receivable and general intangibles. For furniture and artwork, there will need to be specific descriptions so that JFL can identify the property (i.e., 6 desktop computers located at Irvine office, two conference tables, two prints hanging in reception and copy room, etc.)

### 6. **EA's Liabilities.**

JFL will agree that Avenatti can comply with this request by creating a document identifying EA's current liabilities.

### 7. **EA's Insurance Policies.**

JFL's stands by its original request.

### 8. **EA Federal & State Tax Returns.**

JFL stands by its original request.

### 9. **EA Profit & Loss Statements.**

JFL stands by its original request.

10. **EA Balance Sheet.**

JFL stands by its original request.

11. **EA Client List.**

JFL will agree that Avenatti can comply with this request by preparing a list of EA clients from 2014 to the present. To the extent the client has not filed a lawsuit, JFL will agree that Avenatti can identify the client by a pseudonym (e.g. John Doe 1), the name of the potential adversary, and a general description of the claim without identifying details (e.g., personal injury, employment discrimination, etc.), subject to JFL's right to request further information at a later date.

12. **Current Lawsuits.**

JFL will agree that Avenatti can comply with this request by preparing a list of the currently pending cases in which EA, Avenatti & Associates ("AA"), Avenatti, or any entity controlled in whole or in part by Avenatti is counsel of record or may be entitled to receive fees. The list should include the Case Name, Court, Case Number and the Party Represented.

13. **Former Lawsuits.**

JFL will agree that Avenatti can comply with this request by preparing a list of the currently pending cases in which EA, AA, Avenatti, or any entity controlled in whole or in part by Avenatti formerly represented a client (but no longer does) by Case Name, Court, Case Number and the Party Represented.

14. **EA Retainer Agreements.**

JFL stands by its original request with the following modification: In the event the case has not been filed, EA may redact the name of the client and use the assigned pseudonym from the EA client list (see No. 11.)

15. **EA Fee Sharing Agreements.**

JFL stands by its original request with the following modification: In the event the case has not been filed, EA may redact the name of the client and use the assigned pseudonym from the EA client list (see No. 11.)

|   |   |
|---|---|
| 1 | 16. **EA Other Compensation Agreements.** |
| 2 | JFL stands by its original request with the following modification: In the event the case has |
| 3 | not been filed, EA may redact the name of the client and use the assigned <u>pseudonym</u> from the EA |
| 4 | client list (see No. 11.) |
| 5 | 17. **EA Rent or Sublease Agreements.** |
| 6 | JFL will agree to narrow this request so that it only requires the production of rent or |
| 7 | sublease agreements that entitled EA or its affiliates to receive rent payments from January 1, 2018 |
| 8 | to the present. |
| 9 | 18. **EA Loan Agreements**. |
| 10 | JFL will agree to narrow this request in the following manner.  Avenatti should be required |
| 11 | to produce any loan agreements between EA, on the one hand, and Avenatti, Eagan, or any entity |
| 12 | owned or controlled in whole or in part by Avenatti or Eagan.  With respect to loan agreements |
| 13 | with other parties, JFL will agree that Avenatti can comply with this request by producing loan |
| 14 | agreements in effect after January 1, 2018. |
| 15 | 19. **EA Third-Party Beneficiary Agreements**. |
| 16 | JFL will agree to narrow this request so that it will only require the production of agreements |
| 17 | in which EA was or may be entitled to receive money as a third-party beneficiary after January 1, |
| 18 | 2018. |
| 19 | 20. **EA Financing Agreements.** |
| 20 | JFL will agree to narrow this request so that it will only require the production of financing |
| 21 | agreements that are or were in effect after January 1, 2013. |
| 22 | 21. **EA Payments to Avenatti or Avenatti Entities Over $1,000**. |
| 23 | JFL will agree that Avenatti does not need to produce such records so long as they are |
| 24 | reflected in the produced bank statements. |
| 25 | 22. **EA Payments to Eagan or Eagan Entities Over $1,000**. |
| 26 | JFL will agree that Avenatti does not need to produce such records so long as they are |
| 27 | reflected in the produced bank statements. |
| 28 |   |

23. **EA Agreements with AA**.

JFL stands by its original request.

24. **AA and Avenatti Retainer Agreements.**

JFL stands by its original request with the following modification: In the event the case has not been filed, EA may redact the name of the client and use the assigned pseudonym from the EA client list (see No. 11.)

25. **EA Assignment Agreements.**

JFL stands by its original request.

26. **EA Fee Dispute Documents.**

JFL will agree to narrow this request so that it only requires Avenatti to produce documents and communications relating to fee disputes that are or were not resolved after January 1, 2018.

27. **EA Payments Over $1,000.**

JFL will withdraw this request.

28. **EA Checks to "Cash"**

JFL will narrow this request so that it only requires Avenatti to produce documents or ledgers indicating who received the cash payment.

29. **EA Withdrawals or Counterchecks to "Cash"**.

JFL will narrow this request so that it only requires Avenatti to produce documents or ledgers indicating who received the cash payment.

30. **EA Agreements with Gerald Tobin.**

JFL stands by its original request to determine whether any payments to Tobin were subject to lawful agreements or were fraudulent transfers made to compensate him for filing his involuntary bankruptcy petition.

31. **Documents and Communications with Gerald Tobin.**

JFL will narrow this request to communications regarding any payments made to Tobin and concerning his involuntary bankruptcy petition.

| | |
|---|---|
| 1 | 32. **Agreements with the X-Law Group and/or Filippo Marchino** |
| 2 | JFL stands by its original request. |
| 3 | 33. **Documents/Communications About the JFL Judgment** |
| 4 | JFL will agree to narrow this request so that it only requires the production of *non-privileged* |
| 5 | documents and communications concerning or relating to the judgment in favor of JFL, including |
| 6 | but not limited to emails, notes, letters, memoranda and text messages. JFL will agree that Avenatti |
| 7 | <u>does</u> <u>not</u> need to produce court filings relating to the Judgment or prepare a privilege log of |
| 8 | privileged communications, unless the communication is with a party who is not an attorney |
| 9 | representing EA. |
| 10 | 34. **Documents Concerning Maseco.** |
| 11 | JFL has agreed to withdraw this request without prejudice. |
| 12 | 35. **EA Agreements with any Entity Controlled by Avenatti.** |
| 13 | JFL has previously clarified this request is limited to agreements where EA is one of the |
| 14 | parties. |
| 15 | 36. **EA's QuickBook Account Records** |
| 16 | JFL stands by its original request. |
| 17 | 37. **EA's Payroll Records.** |
| 18 | JFL will agree to withdraw this request without prejudice. |
| 19 | D. **Continuation of ORAP.** |
| 20 | JFL requests that Avenatti be required to comply with the Subpoena within two weeks. JFL |
| 21 | further requests the Court continue the ORAP to take place on December 20, 2018. |

Dated: October 1, 2018

Respectfully submitted,

FRANK SIMS & STOLPER LLP

By: */s/ Scott H. Sims*
    SCOTT H. SIMS
    ANDREW D. STOLPER
    Attorneys for Judgment Creditor
    JASON FRANK LAW, APC

## DECLARATION OF JASON M. FRANK

I, Jason M. Frank, declare as follows:

1. I am the owner and president of the judgment creditor, Jason Frank Law, PLC ("JFL"). I am admitted to practice law before all federal and state courts in the State of California, and I am a member in good standing of the State Bar of California. I have personal knowledge of the facts set forth herein, unless stated on information and belief, and if called as a witness, I could and would competently testify thereto.

2. I have been a member in good standing of the State Bar of California since 1997. I received my J.D. degree from the University of Michigan in 1997, and my B.A. degree from the University of Michigan in 1994. I was formerly a litigation partner at Paul Hastings Janofsky & Walker LLP. From February 2009 through May 20, 2016, I was an attorney at Eagan Avenatti, LLP ("EA"), either as an employee or through a contract between JFL and EA. I am currently a partner and founder of Frank Sims & Stolper LLP.

3. Pursuant to this Court's October 30, 2018 Order, I and my counsel, Scott Sims, sent several email communications to Michael Avenatti and his office manager, Judy Regnier, to schedule a meet-a-confer regarding the Subpoena. These emails were sent on October 30, November 7, November 13 and November 14. A true and correct copy of these emails are attached as **Exhibits A, B, C, and D**.

4. Mr. Avenatti did not respond to any of the emails until November 14, 2018, at which time he indicated he would be available to speak at 4:00 p.m. In response, I sent him JFL's offer to further narrow the documents requested in the Subpoena. A true and correct copy of this correspondence is attached as **Exhibit E**.

5. At 4:00 p.m., Mr. Sims and I called Mr. Avenatti at his office and on his cell phone. There was no answer, and the receptionist at the firm indicated that Mr. Avenatti was not available. Mr. Sims, subsequently, sent Mr. Avenatti an email asking him to contact us when he was available to meet-and-confer, a true and correct copy of which is attached as **Exhibit F**. Mr. Avenatti never responded.

6.     To date, Mr. Avenatti has not offered to produce any documents in response to the Subpoena.

7.     On October 22, 2018, the California Superior Court for the County Los Angeles granted JFL's Motion for Summary Judgment against Avenatti personally in the amount of $4.85 Million, plus interest and attorneys' fees in the matter <u>Jason Frank Law, PLC v. Michael Avenatti</u>, Case No. BC706555.  The judgment was based on Avenatti's failure to honor the personal guaranty (the "Guaranty") in the event his firm, Eagan Avenatti LLP ("EA") defaulted on the Settlement.

8.     JFL served a subpoena duces tecum on California Bank & Trust ("CBT") for EA's bank records.  On or about October 17, 2018, CBT produced EA's bank records for the period of January 2013 through September 28, 2018.  The production included all EA bank accounts at CBT, except EA's client-trust account (the "IOLTA" account).

9.     I have personally reviewed the bank records produced by CBT.  The records were also inputted into a software program which is able to sort the various transactions and itemize the number of transactions and amounts paid to various parties, among other information.

10.    Based on this review, the bank statements indicate that Avenatti has funneled <u>tens of millions of dollars</u> from EA to various corporate entities owned and controlled by Avenatti.  For example, from 2013 to the present, there are approximately 405 transactions where EA collectively transferred over **$21.4 Million** to Avenatti & Associates, APC and approximately 98 transactions where EA collectively transferred over **$8.6 Million** to Global Baristas – a coffee company owned by Avenatti.  There are also numerous transactions with other Avenatti owned companies, such as Passport 420, LLC and GB Autosport LLC.  Based on my research and personal knowledge, Passport 420 LLC is the entity through which Avenatti owns his Honda jet airplane and GB Autosport is the entity that operates Avenatti's racing team.

11.    While CBT's production did not include bank records for EA's IOLTA account, the produced bank statements contain information about transfers between EA's operating accounts and the IOLTA account.  For example, after the Bankruptcy Court dismissed the bankruptcy case on March 14, 2018, there are approximately 73 transactions where EA transferred money from the

STATUS REPORT RE MOTION FOR A PROTECTIVE ORDER

1    IOLTA account to EA's operating account totaling over **$1.5 Million**. My counsel will bring copies

2    of these post-bankruptcy bank statements for the Court's review to the hearing on Wednesday.

3         I declare under penalty of perjury under the laws of the United States of America that the

4    foregoing this true and correct. Executed this 26th day of November 2018.

                                                             JASON M. FRANK