Scott H. Sims, State Bar No. 234148
Andrew D. Stolper, State Bar No. 205462
FRANK SIMS & STOLPER LLP
19800 MacArthur Boulevard, Suite 855
Irvine, California 92612,
Telephone:   (949) 201-2400
Facsimile:   (949) 201-2401
astolper@lawfss.com
ssims@lawfss.com

Attorneys for Judgment Creditor
JASON FRANK LAW, PLC

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re<br><br>EAGAN AVENATTI, LLP,<br><br>Debtor. | Case No. 8:18-CV-01644-VAP-KES<br><br>**DECLARATION OF JASON M. FRANK IN SUPPORT OF MOTION FOR APPOINTMENT OF RECEIVER AND RESTRAINING ORDER**<br><br>[*Motion, Declaration of Brian Weiss and [Proposed] Order filed concurrently herewith*]<br><br>Date:   **March 12, 2018**<br>Time:   **10:00 a.m.**<br>Courtroom:   **6D** |

## DECLARATION OF JASON M. FRANK

I, Jason M. Frank, declare as follows:

1. I am the owner and president of the judgment creditor, Jason Frank Law, PLC ("JFL"). I am admitted to practice law before all federal and state courts in the State of California, and I am a member in good standing of the State Bar of California. I am currently a partner at Frank Sims & Stolper LLP ("FSS"). I am making this declaration in support of JFL's Motion for Appointment of Receiver (the "Motion.") I have personal knowledge of the facts set forth herein, unless stated on information and belief, and if called as a witness, I could and would competently testify thereto.

2. I worked at EA from February 15, 2009 through May 20, 2016. EA is small litigation firm that had approximately seven to nine attorneys at any given time during my employment at the firm. EA primarily handles contingency matters, whereby the firm only receives legal fees after a case resolves in favor of EA's clients. The two equity partners are Michael Eagan ("Eagan") and Michael Avenatti ("Avenatti"). Avenatti is the managing partner of the firm and owns his interest in the firm through his personal corporation, Avenatti & Associates, APC ("AA").

3. My last contract with EA was entered as of November 1, 2013. The contract was an independent contractor agreement between EA, on the one hand, and my professional law corporation, JFL, and I (Jason Frank) on the other hand. Pursuant to Section 3 of the contract, JFL was entitled to various forms of compensation, including 25% of the firm's annual profits, 20% of the fees collected from Frank's clients and certain case-specific bonuses, among other compensation. JFL was also entitled to the firm's financial information, including its federal tax returns, Schedule K-1's and annual revenue and expense reports pursuant to Section 5 of the contract. A true and correct copy of this contract is attached as **Exhibit 1**.

4. EA failed to pay the amounts owed to JFL under the independent contractor agreement. Accordingly, in February 2016, I, on behalf of JFL, filed an arbitration demand with JAMS for breach of contract. JFL later added a claim for fraud and punitive damages after learning EA and Avenatti had been misstating the firm's profits. I resigned from the firm on May 20, 2016.

5. The arbitration was scheduled to go forward on March 13, 2017. On February 10, 2017, the three-judge arbitration panel unanimously awarded substantial issue and evidentiary sanctions against EA, including a finding that EA had "acted with malice, fraud and oppression by hiding its revenue numbers" and "tax returns" from JFL in violation of the independent contractor agreement. The panel concluded that further issue sanctions were appropriate due to the "magnitude of EA's non-compliance with Panel Orders" concerning its failure to produce financial records. A copy of the Panel's Final Sanction Order is attached as **Exhibit 2**. On February 22, 2017, the Panel unanimously ordered Avenatti, Eagan and EA's office manager, Judy Regnier, to each appear for a deposition no later than March 3, 2017, or else JFL could request additional sanctions. A copy of the Panel's Order Compelling Depositions is attached as **Exhibit 3**.

6. On March 1, 2017, less than two weeks before the arbitration and two days before the deposition deadline, a single creditor named Gerald Tobin with a purported claim of $28,700 filed a petition to place EA into involuntary bankruptcy in the Middle District of Florida, thereby staying the arbitration proceedings. (Case No. 6:17-bk-01329-KSJ, Doc. 1.) JFL filed an emergency motion for relief from the stay. (Id., Doc. 3). The Florida bankruptcy court conditionally granted the motion because the "involuntary case has the stench of impropriety" and questioned whether Tobin "has some relationship with the firm that would have induced a collusive filing or if [EA] just got plain lucky that somebody filed on the eve of the arbitration." Notwithstanding the foregoing, court indicated the stay would remain in effect if EA voluntarily consented to be placed into bankruptcy. A copy of the relevant excerpts of the hearing transcript (pp. 21:21 to 24:7) before the Florida bankruptcy court are attached as **Exhibit 4.**

7. On Friday, March 10, 2017, one court day before the arbitration, EA consented to be placed into Chapter 11 bankruptcy thereby preventing the arbitration from going forward

8. During the bankruptcy, there were two 341(a) Meeting of Creditors conducted by the U.S. Trustee's office in which Avenatti testified on behalf of EA: the first occurred on June 12, 2017 and the second on July 14, 2017. The second meeting was held due to the fact that the U.S. Trustee's office identified a number of "errors" in EA schedules and required EA to file amended schedules. A copy of the excerpts cited in the Motion from the transcript of the first 341(a) Meeting

-3-

Declaration of Jason M. Frank ISO Motion for
Appointment of Receiver & Restraining Order

of Creditors (pp. 105:4-25 187:6 – 188:14) is attached as **Exhibit 5.** A copy of the excerpts cited in the Motion from the transcript of the second 341(a) Schedule Meeting of Creditors (pp. 51:17-25; 59:2 – 63:9; 70:2 – 73:18) is attached as **Exhibit 6.**

9. In August 2017, I entered into a settlement with EA, AA, Avenatti and Eagan on behalf of myself, JFL, my current law firm, FSS, and my current partners, Scott Sims ("Sims") and Andrew Stolper ("Stolper"). The settlement was documented in a written agreement dated December 12, 2017. A true and correct copy of the written Settlement Agreement (without its exhibits) is attached as **Exhibit 7.**

10. On March 15, 2018, the Bankruptcy Court approved the Settlement and dismissed EA's bankruptcy case. As a result, EA's first settlement payment to JFL was due within 60 days, on or before May 14, 2018. EA failed to make the payment.

11. As a result of EA's default of the Settlement, on May 22, 2018, the Bankruptcy Court entered a final judgment against EA in the amount of $10 million plus post-judgment interest and reasonable attorney fees and costs incurred in collecting the judgment (the "Judgment"). (Case No. 8:17-bk-11961-CB, Doc. 445). A Writ of Execution was issued on June 6, 2018 in the amount of $10,008,465.75, a true and correct copy of which is attached as **Exhibit 8**. A judgment lien in the amount of $10,008,465.75 against EA's assets was entered with the California Secretary of State on June 7, 201, a true and correct copy of which is attached as **Exhibit 9**. Based on a search of prior liens, it is my understanding that JFL's secured judgment lien has priority over all other liens and claims against EA and its property, with the possible exception of approximately $200,000 in liens still held by the United States Internal Revenue Service (the "IRS").

12. On or about November 20, 2018, the California Superior Court for the County of Los Angeles entered a judgment in favor of JFL against Avenatti for $5,054,287.75, not including post-judgment interest and attorney fees and costs. This was due to Avenatti's breach of a personal Guaranty entered in connection with the Settlement. A copy of the judgment against Avenatti is attached as **Exhibit 10**.

13. To date, EA has not made any payments toward the Judgment. The U.S. Marshals sent Memorandums of Garnishee notifying JFL that it levied $3,003.93 from EA's bank accounts

in June 2018 and $99.30 in July 2018 and $5,649.82 in November 2018.

14. There is now due and owing JFL the amount of $10,000,000 plus interest from the date of the entry of the Judgment (May 22, 2018) at a rate of approximately $564.38 per day for an approximate total of $150,125.08 ($564.38 x 266 days). I have not included a liquidated amount of counsel fees and costs incurred to date to enforce the Judgment, as that amount increases nearly daily. But I, on behalf of JFL, expressly reserve the right to seek such amounts in the future as provided for in the Judgment.

15. On or about July 12, 2018, Avenatti was ordered to appear for a judgment debtor exam on July 25, 2018. (Case No. 8:17-bk-11961-CB, Dkt. 477). The Bankruptcy Court also issued a subpoena for financial records and client information, among other categories of documents.

16. On July 25, 2018, Avenatti showed up to the judgment debtor exam without any documents (beyond his publicly filed bankruptcy schedules). The exam was of little value because Avenatti would repeatedly claim he needed to "look at" his financial records to answer any specific questions about EA's assets. A true and correct copy of excerpts from the July 25, 2018 exam cited in the Motion (pp. 10:15 – 11:1; 32:14-33:14; 41:11 – 42:8) is attached as **Exhibit 11.** A full copy of the exam was lodged with the Court in this matter on or about January 24, 2019. (Doc. 43.)

17. On November 28, 2018, this Court ordered Avenatti to produce the records and information requested in the subpoena as modified by JFL's status conference report concerning meet and confer efforts. (Doc. 25.) To date, Avenatti has failed to produce the financial records, client information and case information, among other documents ordered by the Court despite numerous opportunities to do so – as set forth in detail in this Court's Certification and Order to Show Cause Re Contempt. (Doc. 48.) Judge Phillips has indicated she will be setting a hearing on whether to find Avenatti in contempt based on this Court's certified findings of fact.

18. On July 11, 2018, the Bankruptcy Court issued a restraining order (the "Restraining Order") precluding EA from "assigning, encumbering or in any way transferring any proceeds, attorney's fees, costs, rights to payments and accounts receivable" that EA receives or is entitled to receive from any clients or lawsuits identified in Exhibit A to JFL's Amended Motion for Entry of

Declaration of Jason M. Frank ISO Motion for Appointment of Receiver & Restraining Order

Assignment and Restraining Order (the "Cases"). (Case No. 8:17-bk-11961-CB, Doc. 498.) The order further required EA to file notice of receipt of any monies received from the Cases regardless of whether the payment is made to EA, AA, Avenatti or Eagan, or any entity controlled by them. (Id.) A true and correct copy of the Restraining Order and Exhibit A identifying the Cases covered by the Order are attached as **Exhibit 12.** A true and correct copy of the cited excerpts from the July 11, 2018 transcript of the hearing on JFL's Amended Motion for Entry of Assignment and Restraining Order cited in the Motion (pp. 41:18-43:20) is attached as **Exhibit 13**.

19. EA has never timely filed the notice of receipt of funds required by the Restraining Order, and only does so after JFL notifies EA and/or the Court of EA's non-compliance. To date, EA has not filed a notice for any money received after December 12, 2018, despite its assurances it would submit the notice by the 15th of every month. Specifically, in response to an earlier Motion for Contempt filed by JFL, EA argued the Restraining Order was "silent" on *when* EA had to send the notice of receipt of money and opposed JFL's contention that EA had to provide prompt notice upon receipt of payment. (Case No. 8:17-bk-11961-CB, Doc. 538.) Instead, EA argued it "always intended to file its status reports on a monthly basis much like the monthly operating reports that it filed in the bankruptcy case" and would do so on the 11th of each month. (Id. at 2.) At a hearing on August 27, 2018, the Bankruptcy Court permitted EA to file the notice by the 15th of each month. But when September 15th arrived, EA failed to provide the notice. After notifying EA's counsel of the non-compliance, EA subsequently served the notice on September 18, 2018. However, on October 15, EA once again failed to provide the notice. After JFL notified EA of the deficiency, EA sent a notice on October 18, 2018. Nothing was sent in November 2018. After raising this delinquency with this Court, EA filed a notice on December 18, 2018 for the time period October 13 through December 12, 2018. No other notices have been provided since. A true and correct copy of the excerpts from the August 27, 2018 transcript cited in the Motion (p. 44:7-12) is attached as **Exhibit 14.**

20. In response to a subpoena, California Bank & Trust ("CBT") has produced copies of EA's bank records to JFL for the time period January 1, 2013 through October 31, 2018. CBT has also produced bank records for EA's client trust accounts from the time period January 1, 2012

1  through October 31, 2018.  In addition, CBT has produced bank records for other entities owned
2  by Avenatti, including AA, Global Baristas and Passport 420, among other entities.

3        21.    In response to a subpoena, City National Bank ("CNB") has produced copies of
4  bank records to JFL for four (4) accounts Avenatti opened during the bankruptcy, an operating
5  account and three client trust accounts.

6        22.    Pursuant to this Court's instructions, JFL is redacting all but the last four digits of
7  bank account numbers for identification purposes.  (Doc. 34.)

8        23.    During the initial Judgment Debtor Exam, on July 25, 2018, Avenatti testified that
9  EA receives $35,000 per month in fees from a client named Medline Industries, Inc. ("Medline").
10 in connection with one of the Cases covered by the Restraining Order ("Medline v. Kimberly
11 Clark").  (See Ex. 11 at 44:11 – 42:8; Ex. 12, ¶ 14.)

12       24.    Attached as **Exhibit 15** is a check from Medline in the amount of $35,000 that was
13 deposited into EA's Debtor-In-Possession Operating Account at CBT (0313) in June 2018, which
14 was produced by CBT in response to JFL's subpoena.

15       25.    Attached as **Exhibit 16** are checks from Medline (each in the amount of $35,000)
16 that were deposited into EA's Client Trust Account at CBT (4613) in July, August, September and
17 October 2018.  These documents were produced by CBT in response to JFL's subpoena.

18       26.    Attached as **Exhibits 17, 18, 19, 20, 21, 22, 23** and **24** are the bank statements for
19 EA's Client Trust Account at CBT (4613) for the months of March 2018 (when the bankruptcy was
20 dismissed) through October 2018.  These documents were produced by CBT in response to JFL's
21 subpoena.

22       27.    Pursuant to the Operating and Reporting Requirements of the U.S. Trustee ("ORR"),
23 a Chapter 11 Debtor must "immediately close pre-petition bank accounts and open new 'debtor in
24 possession' bank accounts" ("DIP accounts").  (ORR, Operating Guidelines I(A)(1); 11 U.S.C. 345,
25 704(8); 28 U.S.C. 586.).

26       28.    On or about May 23, 2017, due to EA's Chapter 11 bankruptcy, EA closed its bank
27 accounts at CBT and opened Debtor-In-Possession ("DIP") accounts at CBT, including a DIP
28 operating account (0313), a DIP payroll account (0321) and a DIP IRS account (0339).  Attached

-7-  Declaration of Jason M. Frank ISO Motion for Appointment of Receiver & Restraining Order

as **Exhibit 25** is the signature card produced by CBT for the DIP accounts reflecting that they were opened on May 23, 2017.

29. EA did not close its existing client trust account at CBT (8671). However, during the bankruptcy, EA opened two new client trust accounts at CBT: CBT (3714) opened on or about September 19, 2017 and CBT (4613) opened on or about January 26, 2018. A copy of the signature card produced by CBT for these accounts is attached as **Exhibit 26**.

30. On or about May 11, 2017, less than two weeks before opening EA's DIP accounts at CBT, Avenatti opened two new accounts at City National Bank ("CNB") under the name "Michael Avenatti, Esq.": one of which was a general operating account (3504) and the other designated as a "client trust account" (3512). A true and correct copy of the Business Account Agreements produced by CNB for these accounts are attached as **Exhibit 27 (3504)** and **Exhibit 28 (3512)**.

31. During the bankruptcy, Avenatti opened two more "client trust accounts" at CNB: one on or about September 15, 2017 (4705) and the other on or about December 28, 2017 (5566). CNB did not produce Business Account Agreements for these two accounts, but the first bank statements for each account are attached as **Exhibit 29 (4705)** and **Exhibit 30 (5566)**.

32. Avenatti never disclosed that he opened these CNB accounts during the bankruptcy, nor did he disclose the existence of these accounts. In fact, under questioning by the U.S. Trustee's Office during the 341(a) Meeting of Creditors on June 12, 2018, Avenatti denied, under oath, that he currently had any client trust accounts in his name, despite opening these accounts a month earlier. (Ex. 5 at 187:16 – 188:14.) Further, during the initial judgment debtor exam in this matter on July 25, 2018, Avenatti testified that EA's only accounts during the last four years were at CBT. (Ex. 11 at 32:14-33:14.) However, as the evidence establishes below, Avenatti was depositing *millions of dollars of EA fees* into these undisclosed CNB accounts both during and after the bankruptcy.

33. In connection with its Schedule of Assets in the bankruptcy, EA identified a series of cases in which EA was entitled to contingency fees. (Case No. 8:17-bk-11961-CB, Doc. 149, Exhibit B-75). EA filed an "Errata" to its schedules on August 22, 2017 because it failed to list

certain matters identified during the bankruptcy proceedings. A true and correct copy of the list of EA contingency cases identified by EA during the bankruptcy, as modified by the "Errata", is attached as **Exhibit 31.**

### The Greco v. NFL Cases

34. One of the matters EA listed on its Schedule of Assets was the Greco v. NFL case, which was a series of consolidated lawsuits relating to Super Bowl XLV in Dallas, Texas. (Ex. 31, ¶ 8.) EA's local counsel on the matter was Christopher Ayres ("Ayres") of Ayres Law Office P.C. (the "Ayres firm").

35. On or about December 27, 2018, JFL served a deposition and document subpoena on the Ayres firm. Per JFL's agreement, the Ayres firm provided an affidavit in lieu of a deposition, and produced 34 pages of records (the "Ayres Affidavit"). Attached as **Exhibit 32** is a true and correct copy of the Ayres Affidavit.

36. Attached as **Exhibit 33** is an email from Ayres, dated May 10, 2017, which was produced by Ayres in connection with JFL's subpoena.

37. Attached as **Exhibit 34** is an email from Avenatti, dated May 15, 2017, in which Avenatti instructs how EA's payment of $1,361,717.27 should be wired to two separate accounts. Avenatti instructs how one wire in the amount of $408,723.70 should be sent to CBT with the beneficiary name EA and the other wire in the amount of $952,994.57 should be sent to CNB in the name of "Attorney Client Trust Account, 520 Newport Center Dr. Ste. 1400, Newport Beach, CA." This is the address for EA. This email was produced by Ayres in connection with JFL's subpoena.

38. Attached as **Exhibit 35** is the May 2017 bank statement from EA's prior Operating Account at CBT (2851) reflecting receipt of the wire of $408,723.70 from the Ayres firm, which was produced by CBT in response to the subpoena.

39. Attached as **Exhibit 36** is a chart of incoming wires into the CNB client trust account (3512) produced by CNB in response to the subpoena. It reflects that this account received a wire from the Ayres firm in the amount of $952,994.57.

40. EA disclosed the receipt of the $408,723.70 in its Monthly Operating Report for May 2017. (Case No. 8:17-bk-11961-CB, Doc. 126, pp. 1, 23.) However, EA <u>did not</u> disclose the receipt of the other $952,994.57. (<u>Id.</u>) In other words, EA and Avenatti made it appear to the Bankruptcy Court, the U.S. Trustee's office and EA's creditors that EA only received $408,723.70 from the Ayres firm in May 2017, when in fact it received over $1.36 million.

41. Avenatti transferred virtually all of the $952,994.57 from the CNB client trust account (3512) to the CNB operating account (3504) in seven separate transactions over the next two months. Attached as **Exhibit 37** are the counter checks for the CNB client trust account (3512) for the months of May, June and July 2017 transferring the money to the CNB operating account (3504). Attached as **Exhibit 38** are the bank statements for the CNB operating account (3504) for the months of May, June and July 2017 reflecting the deposits.

42. As soon as the money from the <u>Greco v. NFL</u> cases was deposited into the CNB operating account (3504), Avenatti immediately wired the money to AA's operating account at CBT (0661). (<u>See</u> Ex. 38). Attached as **Exhibit 39** is a chart of outgoing wires from the CNB operating account (3504) reflecting the wires to AA.

43. Attached as **Exhibit 40** are the bank statements from AA's operating account at CBT (0661) for the months of May and June 2017, reflecting the deposits from the <u>Greco v. NFL</u> cases and the subsequent payments AA made for Avenatti's personal expenses -- such as his monthly rent at the Ten Thousand luxury apartment building in Century City ($14,235.98), monthly car payments on his Ferrari ($4,000), Traditional Jewelers ($11,000), Koi fish ($1,348), etc. -- as well as larger transfers to his other business interests, such $150,000 to his coffee company (Global Baristas) and $232,875 to HTP Motorsport GmBh for his auto racing hobby.

### Barela v. Brock USA, LLC

44. EA was counsel of record for Greg Barela in a lawsuit entitled <u>Barela v. Brock USA, LLC</u>, Case No. 8:15-cv-779 ("<u>Barela</u>") filed in U.S District Court for the Central District of California in May 2015. The lawsuit was compelled to arbitration before the Judicial Arbiter Group, Inc. in Colorado. A true and correct copy of the docket reflecting this information is attached as **Exhibit 41.**

45. During the bankruptcy, on or about December 28, 2017, Avenatti opened another undisclosed client trust account at CNB (5566). On January 5, 2018, this account received a wire of $1.6 million from Brock USA LLC. Attached as **Exhibit 42** is the January 2018 bank statement for CNB (5566) reflecting this wire. Attached as **Exhibit 43** is the Transaction Detail Report for the wire produced by CNB in response to the subpoena.

46. One day prior to the wire, Avenatti deposited a check to EA into CNB (5566) from Judicial Arbiter Group, Inc. for $11,718.75 – which according to memo line on the check was for "Barela v. Brock." A true and correct copy of the check is attached as **Exhibit 44**.

47. On January 11, 2018, Avenatti sent EA a cashier's check for $111,113.22. A true and correct copy of the check is attached as **Exhibit 45**.

48. Remaining money from the $1.6 million deposit was disbursed from CNB (5566) to various persons and entities that appear to be related to Avenatti's coffee company (Global Baristas), such as Dillanos Coffee Roasters and Alki Bakery. Attached as **Exhibit 46** is a chart of outgoing wires from CNB (5566). Attached as **Exhibit 47** is an article from the Seattle times (www.seattletimes.com/seattle-news/before-stormy-daniels-her-attorney-faced-allegations-of-dubious-business-dealings/) about Avenatti and Global Baristas, which identifies Dillanos Coffee and Alki Bakery as creditors of Global Baristas.

49. EA never disclosed the Barela case on its Schedule of Assets in the bankruptcy. (See Exhibit 31). Further, EA and Avenatti did not disclose that Avenatti received money from this settlement to pay his personal expenses. On the contrary, Avenatti signed a statement under penalty of perjury stating that he, as EA's principal, did not receive any compensation that month. (Case No. 8:17-bk-11961-CB, Doc. 372). Barela recently filed a lawsuit against EA and Avenatti claiming that Avenatti never disclosed he received the settlement payment in January 2018 and, in fact, denied receiving the payment. A copy of that complaint as produced by the Daily Beast is attached as **Exhibit 48.**

### Nadjat-Haiem v. Alhadeff

50. During the bankruptcy, EA opened a new client trust account at CBT (3714) on September 19, 2017. (Exhibit 26.) EA did not disclose this account during the bankruptcy.

51. The next day after it was opened, on or about September 20, 2017, a check was deposited into this new EA client trust account (3714) in the amount of $5.5 million. The check states "PAY TO THE ORDER OF Eagan Avenatti LLP, as attorney for Jennifer Nadjat-Haiem." A true and correct copy of the check is attached as **Exhibit 49**.

52. A search of court records reveals that EA represented Nadjat-Haiem in a personal injury action entitled <u>Jennifer Nadjat-Haiem v. Matthew Joseph Alhadeff</u>. A true and correct copy of the docket reflecting EA's representation of Nadjat-Haiem is attached as **Exhibit 50.**

53. EA <u>did</u> <u>not</u> list this matter on its Schedule of Assets in the bankruptcy. (<u>See</u> Exhibit 31). EA further did not disclose to the Bankruptcy Court the receipt of this payment in its Monthly Operating Report. (Case No. 8:17-bk-11961-CB, Doc. 260.) Instead, similar to the <u>Greco v. NFL</u> case, Avenatti transferred a portion of the money ($409,241.28) to EA's DIP account -- which amount was disclosed in the Monthly Operating Report -- while keeping a larger portion hidden in the client trust account so he could transfer it to himself and pay other personal expenses without the knowledge of the Bankruptcy Court or EA's creditors. (<u>Id</u>., p. 18.) In total, Avenatti transferred at least $1.7 million from the new client trust account at CBT (3714) to himself, his coffee company (Global Baristas) and other expenses relating to his coffee company. Attached as **Exhibit 51, 52** and **53** are the September, October and November 2017 bank statements for EA's client trust account at CBT reflecting these facts.

54. Avenatti did not disclose he received any money from this settlement. On the contrary, he falsely stated, <u>under penalty of perjury</u>, in the October and November 2017 Monthly Operating Reports that EA did not provide "any compensation or renumeration to any officers, directors, principals or other insiders" during the months of October and November 2017. (Case No. 8:17-bk-11961-CB, Doc. 294, 310.)

**Personalized Beauty**

55. In September 2017, Avenatti opened another undisclosed client trust account at CNB (4705). (<u>See</u> Exhibit 29.) That same month, approximately <u>$29 million</u> was deposited into the account from a third-party, Personalized Beauty Discovery, Inc. ("Personalized Beauty"), as well as $899,795.85 from Avenatti. A true and correct copy of the September 2017 bank statement

-12- Declaration of Jason M. Frank ISO Motion for Appointment of Receiver & Restraining Order

1 | for the CNB (4705) account is attached as **Exhibit 54**.

2 |       56.     A true and correct copy of a chart of incoming wires into the CNB (4705) account is attached as **Exhibit 55**.

      57.     A true and correct copy of a chart of outgoing wires from the CNB (4705) account is attached as **Exhibit 56**. During the period March 20, 2018 to May 1, 2018, Avenatti wired over $1 million from the CNB account (4705) to an EA client trust account at CBT (3714). As the May 14, 2018 deadline for EA's first Settlement Payment to JFL approached, Avenatti transferred the remaining amount of over $4 million to a clearing account at the Boston Private Bank & Trust, Co., thereby emptying the CNB account prior to JFL's Judgment

      58.     A true and correct copy of a counter check, dated September 18, 2017, in the amount of $2,787,650.87 from the CNB (4705) account to the operating account at CNB (3504) is attached as **Exhibit 57**.

**Post-Judgment Acts of Concealment and Diversion**

      59.     On June 18, 2018, a third-party wired $17 million to the same undisclosed "client trust" account at City National Bank that Avenatti set up for the Greco v. NFL money (CNB 3512). (See Exhibit 36). That same day, Avenatti wired $1.2 million in fees from this settlement into another undisclosed client trust account that EA opened at CBT (4613). (See Exhibit 39.) This client trust account was opened by EA during the bankruptcy on January 26, 2018. (See Exhibit 26.) This was the first deposit into this account. The money was then transferred to various Avenatti entities (AA and Passport 420) and related third-parties (the X-Law Group). (See Exhibit 39.)

      60.     The bank statements produced by CBT and CNB have been loaded into an electronic database (Valid8) that enables me to search for payments to various persons and entities and totals the payments by account or multiple accounts. Using this tool, I calculated the total amount of money paid from EA's client trust accounts at CBT to Avenatti's coffee company (Global Baristas), his personal corporation (AA) and the holding company for his HondaJet airplane (Passport 420). I also calculated the total amount paid to these entities after the dismissal of the bankruptcy. These totals include wires and inter-bank transfers. They do not include checks EA may have wrote to

one of these AA entities, so the amounts may be *understated*. This review yielded the following:

    a. EA has transferred over $1,974,219 to Global Baristas from EA's client trust accounts at CBT, including $352,950 since the dismissal of the bankruptcy on March 15, 2018.

    b. EA has transferred $629,660 to AA from EA's client trust accounts at CBT, including $462,150 since the dismissal of the bankruptcy.

    c. EA has transferred $112,500 to Passport 420 from EA's client trust accounts at CBT, including $91,200 since the dismissal of the bankruptcy.

This does not include the other non-EA related payments made from the client trust accounts as reflected in those bank statements. (See, e.g., Exhibits 17, 18, 19, 20, 21, 22, 23 and 24.)

### Kimberly-Clark

61. One of EA's largest known assets is its right to attorney fees and costs in a class action entitled Bahamas Surgery Center LLC. V. Kimberly-Clark Corp. *et al.*, Case No. CV 14-8390-DMG (PLAx) (the "Kimberly-Clark class action"). During the bankruptcy, EA obtained a trial verdict of approximately $5 million in compensatory damages and prejudgment interest, and approximately $449 million in punitive damages. (Case No. CV 14-8390-DMG, Doc. 501, 503.) The trial court (the Honorable Dolly Gee) reduced the punitive damage award on remitter to approximately $20 million and entered a judgment against Defendants for approximately $25 million. (Id., Doc 529, 578.) Defendants appealed the judgment, and EA, on behalf of the class, appealed the punitive damage award reduction. The Parties agreed to delay EA's application for fees and costs until after the resolution of the appeals. The briefing on the appeals is scheduled to conclude next month in March 2019.

62. Assuming the judgment in the Kimberly-Clark class action is affirmed, EA stands to be awarded fees and costs of at least $10 million. During the past two decades of my practice, I have specialized in class action litigation. As a result, I am well-versed in the law regarding fee awards in federal class actions. Where, as here, a class action goes to trial and then on appeal, the standard fee award is typically 40% of the total award. (See Expert Declaration of William B. Rubenstein in Hale v. State Farm et al., Case No. 3:12-cv-00660 (S.D. Ill., Oct. 16, 2018), ¶ 38.)

1  In December 2018, my firm and co-counsel were recently awarded fees totaling approximately 40% of a total $25 million settlement fund in an employment class action in Orange County, California entitled Wall v. HP Inc. et al., Case No. 30-2012-00537897-CU-BT-CXC.

63. During these post-judgment proceedings, Avenatti filed an opposition to JFL's Amended Motion for Entry of Assignment and Restraining Order in which he claims that EA is only entitled to "a *small portion* of the fees from the case due to the fact the firm was never appointed class counsel in the case." (Case No. 8:17-bk-11961-CB, Doc. 464 at 2.) Instead, Avenatti contends he *personally* was appointed Class Counsel, not the firm, and therefore he is personally entitled to the fees. (Id.)

64. This is not how fee awards work in class actions - fees are awarded to the firm, not the individual lawyer. But even accepting this absurd premise *arguendo*, given that Avenatti is the managing partner of EA, the conflict of interest is obvious. Absent a receiver, Avenatti could deliberately attempt to have the fees awarded to himself or another entity, at the detriment of EA and its creditors. A receiver needs to be in place to ensure EA's interests are represented in any fee application in the Kimberly-Clark class action or other matters.

**EA's Eviction from its Office in Newport Beach, California**

65. EA was evicted from its office at 520 Newport Center Drive, Newport Beach California on November 28, 2018. On December 17, 2018, I, on behalf of JFL as a secured creditor of EA, received a Notice of Right to Reclaim Abandoned Personal Property from counsel for the landlord, the Irvine Company. The deadline to claim the property was January 10, 2019. A true and correct copy of the notice is attached as **Exhibit 58**.

66. On December 21, 2018, I inspected EA's premises with the landlord's representative in preparation for an auction of the abandoned property. Upon inspection, I observed that virtually all of the artwork had been removed from the premises. EA indicated this artwork was worth approximately $50,000 in its bankruptcy schedules. (Case No. 8:17-bk-11961-CB, Doc. 149, ¶ 39.) As I was leaving the inspection, I noticed EA's office manager, Judy Regnier, was parked next to my vehicle and sitting in her car in the parking lot, so EA was aware of my inspection.

67. The following week, counsel for landlord notified me that EA had removed all of the property from the premises over the weekend, so there was nothing left to auction. I do not know where EA moved the property, but given the large amount of furniture (desks, conference tables, etc.), it must be in storage somewhere. My understanding is that EA is operating out of a small office in Los Angeles, CA that would not be able to fit all of the abandoned furniture.

68. I am nominating Brian Weiss to serve as the Receiver. I have no objection to his appointment as Receiver.

I declare under penalty of perjury under the laws of the United States of America that the foregoing this true and correct. Executed this 12th day of February 2019.

                                      */s/ Jason M. Frank*
                                      JASON M. FRANK