1  Scott H. Sims, State Bar No. 234148
   Andrew D. Stolper, State Bar No. 205462
2  FRANK SIMS & STOLPER LLP
   19800 MacArthur Boulevard, Suite 855
3  Irvine, California 92612
   Telephone: (949) 201-2400
4  Facsimile: (949) 201-2401
   astolper@lawfss.com
5  ssims@lawfss.com

6  Attorneys for Judgment Creditor
   JASON FRANK LAW, PLC
7

8              UNITED STATES DISTRICT COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10

11 | In re                          | Case No. 8:18-cv-01644-VAP-KES
12 | EAGAN AVENATTI, LLP,            |
13 |            Debtor.              | **OPPOSITION TO MICHAEL J. AVENATTI'S MOTION FOR ORDER QUASHING SUBPOENA AND/OR PROTECTIVE ORDER; DECLARATION OF JASON M. FRANK**
14 |                                 |
15 |                                 |
16 |                                 |
17 |                                 | Date:      April 30, 2019
   |                                 | Time:      10:00 a.m.
18 |                                 | Courtroom: 6D

-1-                       **OPPOSITION TO MOTION TO QUASH SUBPOENA AND/OR PROTECTIVE ORDER**

# TABLE OF CONTENTS

I. INTRODUCTION .................................................................................... 4

II. AVENATTI'S MOTION TO QUASH THE BOA SUBPOENA SHOULD BE DENIED. ........................................................................ 6

    A. The Relevant Legal Standards. ..................................................... 6

    B. This Court Already Ordered Avenatti To Produce These Bank Records. ......................................................................................... 8

    C. Avenatti Keeps Opening Accounts in New Names in which Avenatti and EA's Office Manager, Judy Regnier, are the Signators. ..................................................................................... 11

    D. Avenatti's Notice Arguments are Specious. ............................... 15

III. CONCLUSION ...................................................................................... 15

# TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

British Intern. Ins. Co., Ltd. v. Seguros La Republica, S.A.,
  200 F.R.D. 586 (W.D. Tex. 2000) .................................................................... 7

Internet Direct Response, Inc. v. Buckley,
  2010 WL 1752181 (C.D. Cal. Apr. 29, 2010) ............................................... 6, 7

Kohlrautz v. Oilmen Participation Corp.,
  441 F.3d 827 (9th Cir. 2006) ............................................................................ 7

Ryan Inv. Corp. v. Pedregal de Cabo San Lucas,
  2009 WL 5114077 (N.D.Cal. Dec.18, 2009) 12 ................................................ 7

**Federal Statutes**

Federal Rule of Civil Procedure 69(a)(2) ................................................................ 6, 7

## I. INTRODUCTION.

The Motion to Quash the subpoena to Bank of America ("BOA") ("Motion"), filed by Michael J. Avenatti ("Avenatti"), should be denied. Avenatti objects to the subpoena on the grounds it seeks the bank account records for (1) his personal corporation Avenatti & Associates, APC ("A&A"), (2) the entities that own his coffee company, Tully's, i.e., Global Baristas USA, LLC ("GB USA"), Global Baristas LLC ("GB LLC") and Doppio, Inc. ("Doppio"); (3) his racing company, GB Autosport, LLC ("GB Autosport"); (4) the company that owns his private plane, Passport 420, LLC ("Passport 420"); (5) the accounts in the name of Michael J. Avenatti, Esq.; (6) the accounts in which Michael Avenatti is a signator; and (7) the accounts in which Eagan Avenatti LLP's ("EA") office manager, Judy Regnier, is a signator.

This Court has already ordered Avenatti to produce the bank records for A&A, GB USA, GB LLC, Doppio, GB Autosport, Passport 420 and Michael J. Avenatti. (Doc. 24, p. 4:17-25; Doc. 25; Transcript of Nov. 28, 2018 Hearing at 20:14-21-4, attached as Ex. 1 to Declaration of Jason M. Frank ("Frank Decl.").) Avenatti refused to comply with the Court's order resulting in this Court issuing its Certification and Order to Show Cause re: Contempt – which is still pending before Judge Phillips. (Doc. 48.) In the interim, judgment creditor Jason Frank Law, PLC ("JFL") was forced to subpoena the records directly from the banks, including the BOA subpoena at issue in the present Motion. Now, Avenatti is once again trying to thwart JFL's efforts to obtain these records. This should not be condoned.

The bank records JFL has previously obtained demonstrate that Avenatti has been transferring EA's assets to the bank accounts of Avenatti's various corporate entities identified above. (Frank Decl., ¶ 12, Exs. 15-18.) This is also established in detail in JFL's Motion for Appointment of Receiver and Restraining Order and the supporting declaration of Jason Frank (the "Motion for Receiver"), which attaches

the bank records and evidence of the fraudulent transfers to the accounts of "Michael J. Avenatti, Esq.," A&A, Global Baristas, Passport 420 and GB Autosport. (Doc. 51; Doc 51-1-5.)

To avoid JFL's collection efforts, Avenatti also has been opening accounts under new names, with the one constant being that Avenatti and Regnier are signators on the accounts. (Frank Decl., Exs. 4-5.) Consequently, the BOA subpoena, like a similar subpoena served on City National Bank ("CNB"), includes a request for accounts where Avenatti and Regnier are the signators. (Id., Ex. 2.)

This has already yielded important discovery. On April 1, 2019, CNB produced records for an account under the name of a new corporate entity ("Avenatti LLP") where Avenatti and Regnier were the signators. (Frank Decl., ¶ 6, Ex. 5.) JFL was able to locate over $231,982.00 in checks from EA client, Medline Industries, Inc. ("Medline"). (Id., Ex. 7.) These checks were deposited into this third-party account in an egregious violation of the Bankruptcy Court's July 11, 2018 Restraining Order, which precluded EA from "in any way transferring any proceeds, attorney's fees, costs, rights to payments and accounts receivable it is or may be entitled to receive" from certain identified clients, including Medline. (Doc. 51-2, Ex. 12, Ex. A, ¶ 14.)[1]

The Receiver subsequently obtained emails from Medline which (1) show images sent by Regnier of a torn up $35,000 check made out to Eagan Avenatti, LLP so it could be replaced with a new check made out to "Avenatti LLP"; and (2) contain instructions from Regnier to Medline to specially Fed Ex the checks to a new address in Yorba Linda, California – which happens to be Regnier's personal address. (Frank Decl., ¶ 9, Exs. 9-12.) This is precisely the type of discovery Avenatti is hoping to

---

[1] The Bankruptcy Court's Restraining Order also can be found at Case No. 8:17-bk-11961-CB, Doc. 498. The list of cases covered by the Restraining Order -- referenced in the order as Exhibit A to the Frank Declaration attached to the Motion for Assignment and Restraining Order -- can be found at Case No. 8:17-bk-11961-CB, Doc. 470, Ex. A.

avoid by his present Motion to Quash. One can only imagine what is in the BOA records.

As this Court has previously recognized, because the JFL judgment is a federal judgment, the federal rules regarding privacy and privilege apply; not the California authority cited in Avenatti's Motion. (Frank Decl., Ex. 1, 19:15-20:13.) Under the federal rules, the Court engages in a balancing test to weigh the need for the discovery against the privacy interests of the parties. (Id.) As this Court previously found, "(w)hen the Court considers the nature of the relationship of the parties, the nature of this particular dispute, and the fact that the documents can be produced here on a confidential basis, it seems that that's a sufficient tipping of the scales in favor of production, again with the understanding that those documents can be labeled as confidential in the discovery process." (Id.) For the foregoing reasons, the Court should deny Avenatti's motion and require BOA to comply with the subpoena.

## II. AVENATTI'S MOTION TO QUASH THE BOA SUBPOENA SHOULD BE DENIED.

### A. The Relevant Legal Standards.

The legal arguments raised in Avenatti's Motion have already been raised and rejected in connection with Avenatti's Motion for Protective Order concerning the judgment debtor exam subpoena. (Doc. 6.1; Exs. I, J, & K; Doc. 25.) They should be rejected again.

*First,* Federal Rule of Civil Procedure 69(a)(2) governs discovery in judgment enforcement proceedings and provides that a judgment creditor "may obtain discovery from *any person* - including the judgment debtor - as provided in these rules or by the procedure of the state where the court is located." Internet Direct Response, Inc. v. Buckley, 2010 WL 1752181, at *2 (C.D. Cal. Apr. 29, 2010). "The presumption should be in favor of full discovery of any matters arguably related to the [creditor's] efforts to trace [the debtor's] assets and otherwise to enforce the judgment." Id. (quoting Credit Lyonnais, S.A. v. SGC Int'l, Inc., 160 F.3d 428, 430–

31 (8th Cir.1998).) "Although courts have cautioned that third party inquiry must 'be kept pertinent to the goal of discovering concealed assets of the judgment debtor and not be allowed to become a means of harassment,' inquiry into the assets of third persons is permissible where 'the relationship between [the judgment debtor and third person(s)] is sufficient to raise a reasonable doubt about the bona fides of any transfer of assets between them.'" Id. (quoting Credit Lyonnais, 160 F.3d at 431); see also Ryan Inv. Corp. v. Pedregal de Cabo San Lucas, 2009 WL 5114077, at *3 (N.D.Cal. Dec.18, 2009) 12 Charles Alan Wright, Arthur R. Miller, & Richard L. Marcus, Federal Practice & Procedure § 3014 (2d ed.) (examining cases).

*Second*, in actions to enforce a judgment in federal court under FRCP 69, federal common law regarding privilege applies, not state law. Internet Direct Response, 2010 WL 1752181 at *5 (citing Heathman v. United States District Court, 503 F.2d 1032 (9th Cir. 1974).)

*Third,* California's procedural rules regarding notice to consumers and employees do not apply in connection with discovery concerning a federal court judgment. Kohlrautz v. Oilmen Participation Corp., 441 F.3d 827, 830 (9th Cir. 2006) (federal court follows federal procedural law); British Intern. Ins. Co., Ltd. v. Seguros La Republica, S.A., 200 F.R.D. 586, 594 (W.D. Tex. 2000) (holding that state law setting forth procedures to be followed when seeking bank customer information was not applicable, because judgment creditor was pursuing post-judgment discovery under the Federal Rules of Civil Procedure).

As established herein, and in previous JFL filings, the corporate entities and bank accounts at issue in this Motion are owned and controlled by Avenatti, and Avenatti has used these bank accounts to facilitate the transfer of assets belonging to the judgment debtor, EA. (Doc. 51; Doc 51-1-5; Frank Decl., Exs. 4, 15-18.) Moreover, as noted above and discussed in greater detail below, a virtually identical subpoena served on CNB recently uncovered the transfer of over $231,982.00 of legal fees owed to EA in violation of the Bankruptcy Court's Restraining Order.

(See, infra, § II(C).)  Suffice it to say, there is more than sufficient good cause to require compliance with the BOA subpoena so JFL can trace and locate EA's assets and discover potential fraudulent transfers.

### B. This Court Already Ordered Avenatti To Produce These Bank Records.

On November 28, 2018, this Court ordered Avenatti to produce the documents responsive to the judgment debtor exam subpoena served on Avenatti "as modified by the Status Report filed by JFL on November 26, 2018." (Doc. 25; Frank Decl., Ex. 1 at 20:14-21-4.)  As part of that order, Avenatti was required to produce the bank records for "***any entity owned or controlled by Avenatti***" that received or paid money to EA for the period January 2013 to the present, including but not limited to "Avenatti & Associates, APC, Global Baristas USA, LLC, Global Baristas LLC, Doppio, Inc., GB Autosport LLC, Passport 420 LLC and Michael J. Avenatti, Esq." and related IOLTA accounts.  (Id.; Doc. 24, p. 4:17-23) (emphasis added).  Avenatti did not comply with the Court's order resulting in this Court issuing its Certification and Order to Show Cause re: Contempt – which is still pending before Judge Phillips. (Doc. 48.)

As noted above, in support of his earlier motion for protective order, Avenatti raised the same objections as in the current Motion, including his objections that these requests violated third-party privacy rights and privileges and his contention that a notice of subpoena was required to be sent to the third parties under California's procedural requirements. (Doc. 6.1; Exs. I & K.)  Avenatti further argued that the IOLTA accounts were the property of unrelated third parties (i.e., clients) and not EA nor Avenatti, and thus are not properly the subject of discovery. (Id., Ex. I, p. 4.)  In overruling Avenatti's objections, the Court held as follows:

- "(T)he Court finds that the judgment creditor has explained sufficiently the relevance of those documents in attempting to follow the money and the financial transactions given the circumstances of this case and

given the legal standard here that a judgment debtor examination does permit a wide scope of inquiry consistent with the purpose of allowing the judgment creditor to enforce the judgment." (Frank Decl., Ex. 1 at 17:3-11.)

- "The Court similarly is not persuaded by the argument that the California consumer notice statute would apply here. The briefing that was provided on that does demonstrate that that statute applies to subpoenas that are issued pursuant to California law, and that wasn't the case here and so those are simply not applicable." (Id., 17:24 – 18:4.)

- "With regard to the IOLTA accounts, there was an argument that discovery on those accounts is irrelevant because the money is not the property of the judgment debtor. But again here I believe that the judgment creditor has given us information that the IOLTA accounts may be being used to facilitate financial transactions that do involve assets of the judgment debtor and so understanding the other financial records that may be produced, that this may provide a missing piece of the picture. And even if there's not – you know this is not necessarily an allegation of any wrongdoing as to the use of the IOLTA account, but just in order to understand and ***be able to follow the trail of funds as they are being transferred between certain accounts*** without kind of being like a bloodhound coming up at the end of the stream and losing the trail, that that's a sufficient relevancy to be able to investigate and conduct discovery into those particular accounts." (Id., 18:23 – 19:14.)

- "With regard to the other privileges that have been asserted, the Court is persuaded by the briefing that was in the opposition to the motion

OPPOSITION TO MOTION TO QUASH
SUBPOENA AND/OR PROTECTIVE ORDER

for protective order that established that the Federal privilege law would apply here." (Id., 19:15-18.)

In light of Avenatti's failure to comply with the subpoena, JFL directly served subpoenas on certain banks for the records ordered by the Court. The records produced to date reveal that Avenatti has been transferring and depositing *tens of millions of dollars* of EA funds into the accounts of his various corporate entities. For example:

- As set forth in JFL's Motion for Receiver, during the EA bankruptcy, Avenatti set up four undisclosed accounts at CNB in the name of "Michael J. Avenatti Esq." (Doc. 51, pp. 15 – 25; Doc. 51-4, Exs. 27-30.) Avenatti then secretly directed *millions of dollars* of EA's legal fees to be deposited into those accounts, including fees from the NFL Case, the Barela Case, and the Personalized Beauty Case. (Id.)
- EA transferred *millions of dollars* from its IOLTA accounts to Global Baristas, A&A and Passport 420, including substantial amounts after the bankruptcy. (Doc. 51, pp. 24-25; Doc 51-1, ¶ 60.) For example:
  - EA has transferred over $1,974,219 to Avenatti's coffee company (Global Baristas) from the IOLTA accounts, including $352,950 since the dismissal of the bankruptcy;
  - EA has transferred $629,660 to Avenatti's personal corporation (A&A) from the IOLTA accounts, including $462,150 since the dismissal of the bankruptcy; and
  - EA has transferred $112,500 to Avenatti's private plane holding company (Passport 420) from the IOLTA accounts, including $91,200 since the dismissal of the bankruptcy. (Id.)
- In total, from August 2013 to October 2018, EA transferred *at least* the following amounts from EA's bank accounts at California Bank & Trust ("CBT") to Avenatti's various corporate entities:

- Over $22.04 million to A&A in 463 separate transactions (Frank Decl., ¶ 12, Ex. 15);
- Over $10.6 million to the various Global Baristas entities in 203 separate transactions (Id., Ex. 16);
- $121,000 to Passport 420 (Id., Ex. 17); and
- $64,700 to GB Auto. (Id., Ex. 18).

In sum, there was and remains good cause for this Court to have ordered the production of these other entities' bank records because the evidence demonstrates these accounts are being used to "facilitate financial transactions that do involve assets of the judgment debtor" EA. (Frank Decl., Ex. 1 at 18:23 – 19:14.) Avenatti blatantly ignored this Court's order to produce these records, forcing JFL to directly subpoena these records from the banks. For Avenatti to now come in and further delay the production of these records is simply bad faith and should not be tolerated by this Court.

## C. Avenatti Keeps Opening Accounts in New Names in which Avenatti and EA's Office Manager, Judy Regnier, are the Signators.

The present subpoena to BOA includes a request for any account in which Avenatti or EA's office manager, Judy Regnier, are signators. This is because Avenatti keeps changing the names on his bank accounts in order to hide EA's assets. The one constant is that every account has Avenatti or Regnier as a signator. (Frank Decl., ¶ 5, Ex. 4.)

This conduct was discussed in the Affidavit of Special Agent Remoun Karlous in support of a search warrant, arrest warrant and criminal complaint filed against Avenatti in the Central District of California. (Frank Decl., Ex. 19.) For example, to avoid IRS collection efforts against his coffee company, (1) Avenatti directed his employees to start depositing cash receipts into "a little-used bank account at Bank of America associated with his car racing entity" GB Auto; (2) Avenatti directed his

credit card processing company to "change the company name and Employer Identification Number ("EIN")" from GB USA to GB LLC; and (3) Avenatti changed the name of a party to a customer contract from GB USA to "GB Hospitality LLC," a company which does not appear to have ever been registered with any government agency or operated. (Id., ¶ 11(b),(c), (d).) Avenatti has been using similar techniques to avoid JFL's collection efforts.

For instance, as noted above, JFL served essentially the same subpoena at issue in this Motion on CNB. (Frank Decl., ¶ 3, Ex. 3.) Because the subpoena requested accounts by signators, CNB produced bank records for an entity called "Avenatti LLP" – in which both Avenatti and Regnier were signators. (Id., ¶ 6, Exs. 5-8.) This account was opened in November 2018. (Id., Ex. 6.) JFL was unaware of any entity named "Avenatti LLP" and thus did not specifically request records for "Avenatti LLP" in the subpoena. (Id., Ex. 3.) The records were only produced because the subpoena requested CNB accounts for which Avenatti and Regnier were signators.

JFL received these Avenatti LLP records on April 1, 2019. (Frank Decl., ¶ 6.) The records revealed that Avenatti deposited five checks from Medline into the "Avenatti LLP" account for a total of over $231,982.00. (Id., Ex. 7.) The date of the checks were November 28, 2018, December 20, 2018, February 4, 2019 and February 21, 2019. (Id.)



-12-  OPPOSITION TO MOTION TO QUASH SUBPOENA AND/OR PROTECTIVE ORDER





As the Court may recall from the judgment debtor exam and prior briefing, Medline was a client of EA, until it was recently terminated a few week ago. (Doc. 51-2, Ex. 12, Ex. A, ¶ 14.) It was one of the clients covered by the Bankruptcy Court's July 11, 2018 Restraining Order, which precluded EA from "in any way transferring any proceeds, attorney's fees, costs, rights to payments and accounts receivable it is or may be entitled to receive" from Medline or the *Medline* lawsuit. (Id.) When asked about the Medline payments during his judgment debtor exam,

Avenatti was cagey about where the checks are currently being deposited, who the checks are being made out to and whether he ever directed Medline to change the name of the payee on the checks. (Frank Decl., Ex. 8 at 51:25-57:24.) It was only as a result of this CNB subpoena that JFL was able to find out these crucial answers about one of the largest continuing assets of EA. This was only discovered as a result of the same subpoena at issue in this Motion.

This discovery led to even more damaging evidence. The Receiver contacted Medline and received a series of emails between Judy Regnier and Medline which explains why these checks were suddenly made out to "Avenatti LLP." (Frank Decl., ¶ _, Exs. 9-12.) In one email thread, a check made out to EA was destroyed so it could now be made out to "Avenatti LLP" even though the retainer agreement was with EA. (Frank Decl., Ex. 10.)




In another thread, Regnier directs Medline to Fed-Ex the checks to a new address in Yorba Linda, California – which is Regnier's personal address – rather than EA. (Id., ¶ 9, Ex. 11.) And in an internal Medline email, Medline discusses how "EA" is upset that Medline cannot "hand-hold" the account and Fed Ex every single payment rather than mail the checks to EA. (Id., Ex. 12.)

At some point, the Court needs to put a stop to this unlawful conduct. There are Court Orders in place in this case to prevent this fraudulent diversion of funds –

and Avenatti and Regnier are simply ignoring them. The Medline money that Avenatti diverted from EA was then used to pay his rent ($69,118.50), his divorce attorney Stegmeier Gelbert ($10,000), his ex-wife Christine Carlin ($5,000), and his personal driver James Cameron (over $4,200), among other personal expenses. (Frank Decl., Ex. 8.) Avenatti is living the "high life" off of these fraudulently transferred assets and making a mockery of this Court and the Bankruptcy Court's Orders. The present Motion is just a continuation of Avenatti's improper efforts to cover up his fraudulent transfer of assets and to delay and frustrate collection efforts. It should be summarily denied.

### D. Avenatti's Notice Arguments are Specious.

Avenatti does not identify any federal rules or procedures which require notice of the subpoena to be provided by JFL to Avenatti's third-party entities. Typically, the bank will notify the owner of the account before responding to a subpoena. In any event, Avenatti's claim that his entities were not on notice of the BOA subpoena is absurd. Avenatti is the owner of each of these corporate entities and was properly provided notice of the subpoena.[2] (Frank Decl., Ex. 2.) As such, all of Avenatti's entities were on notice of the subpoena to the extent any such notice was required.

## III. CONCLUSION

For the foregoing reasons, Avenatti's Motion should be denied.

Dated: April 9, 2019　　　　　　　　　　　　FRANK SIMS & STOLPER LLP

　　　　　　　　　　　　　　　　　　　　　　　　/s/ Scott H. Sims
　　　　　　　　　　　　　　　　　　　　　　Scott H. Sims
　　　　　　　　　　　　　　　　　　　　　　Andrew D. Stolper
　　　　　　　　　　　　　　　　　　　　　　Attorneys for Judgment Creditor,
　　　　　　　　　　　　　　　　　　　　　　JASON FRANK LAW, PLC

---

[2] Further, contrary to the contentions in his Motion, Regnier was personally served with a subpoena for her deposition and did not show up -- which will be the subject of an upcoming motion for contempt. (Frank Decl., ¶ 10, Ex. 13.)

# DECLARATION OF JASON M. FRANK

I, JASON M. FRANK, declare as follows:

1. I am a partner at Frank Sims & Stolper, LLP ("FSS") counsel of record for judgment creditor Jason Frank Law, PLC ("JFL"). I am also the owner of JFL. I am admitted to practice law before all federal and state courts in the State of California, and I am a member in good standing of the State Bar of California. I have personal knowledge of the facts set forth herein, unless stated on information and belief, and if called as a witness, I could and would competently testify thereto.

2. Attached as **Exhibit 1** is a true and correct copy of the transcript of the hearing on Eagan Avenatti LLP's and Michael Avenatti's motion for a protective order held on November 28, 2018.

3. Attached as **Exhibit 2** is the Notice of the Subpoena on Bank of America ("BOA") that my office provided to Michael Avenatti and the attached subpoena.

4. Attached as **Exhibit 3** is a virtually identical subpoena my office served on City National Bank ("CNB") on March 11, 2019.

5. Avenatti has not produced any bank records to JFL despite being under a court order to do so. As a result, JFL has been forced to directly subpoena the records from the banks. This has included bank records for Michael J. Avenatti, Esq., Avenatti & Associates, Global Baristas, GB Autosports and Passport 420. Notably, the signators on each of these accounts were Michael Avenatti and Eagan Avenatti's office manager, Judy Regnier. Attached as **Exhibit 4** are the signature cards for the accounts JFL has received for these entities reflecting that Avenatti and Regnier are the signators.

6. On or about April 1, 2019, CNB produced bank records responsive to the 2019 CNB subpoena. These included records for a bank account under the name "Avenatti LLP." I was not aware of this business entity at the time my office prepared the subpoena, and thus it was not listed on the subpoena. However, because Avenatti and Regnier were signators on the accounts, and because the subpoena requested

records by signator name in the alternative to the bank account name, these account records for "Avenatti LLP" were produced. Attached as **Exhibit 5** are the signature cards produced by CNB for the "Avenatti LLP" account showing that Avenatti and Regnier are the signators. Attached as **Exhibit 6** is a document showing that the Avenatti LLP account was opened in November 2018.

7. Attached as **Exhibit 7** are five checks from Medline Industries, Inc. ("Medline") which were deposited into the Avenatti LLP account and produced by CNB, for a total of $231,982.00

8. Attached as **Exhibit 8** are outgoing checks and wires from the Avenatti LLP account produced by CNB reflecting personal payments that Avenatti made from the Medline money including his rent at the Ten Thousand building ($69,118.50), his divorce attorney Stegmeier Gelbert ($10,000), his ex-wife Christine Carlin ($5,000), and his personal driver James Cameron (over $4,200), among other personal expenses.

9. After receiving the CNB bank records, I immediately notified the Receiver, Brian Weiss of the location of the Medline checks. Weiss later informed me that Medline had sent his counsel various emails between Regnier and Medline evidencing Avenatti and Regnier instructing Medline to change the names on the checks from Eagan Avenatti LLP to Avenatti LLP and to send the checks to Regnier's personal address in Yorba Linda, California. Attached as **Exhibit 9** is an email thread from Medline to the Receiver's counsel, John Reitman, explaining how Avenatti and Regnier instructed Medline to change the name on the checks from "Eagan Avenatti LLP" to "Avenatti LLP" and to change the address to Judy Regnier's home address in Yorba Linda, California. Medline also attached the retainer agreement and invoices reflecting that fees were owed to EA not "Avenatti LLP", which is also contained in **Exhibit 9.** I have visited Ms. Regnier's home in the past when we worked together and recognize this is the same address she provided to Medline. Attached as **Exhibits 10, 11** and **12** are copies of email threads evidencing Avenatti

and Regnier's instructions to Medline to change the name of the payee and address of the checks.

10. Attached as **Exhibit 13** is a copy of the subpoena that was personally served on Judy Regnier at her residence on March 13, 2019. Ms. Regnier did not appear for her deposition as required by the subpoena.

11. Attached as **Exhibit 14** are the cited excerpts from the judgment debtor exam of Michael Avenatti in these proceedings

12. I have personally reviewed the bank records produced by California Bank & Trust ("CBT") and CNB. I have also had the bank statements downloaded into a searchable database prepared by Valid8. Using the search function, I ran searches for all payments from EA's bank accounts at CBT to "Avenatti & Associates," "Global Baristas," "Passport 420" and "GB Auto" for the time period August 2013 to October 2018 (the last month of records produced by CBT). The search results indicate that from August 2013 to October 2018, EA transferred *at least* the following amounts from EA's bank accounts at CBT to Avenatti's various corporate entities:

- Over $22.04 million to A&A in 463 separate transactions;
- Over $10.6 million to the various Global Baristas entities in 203 separate transactions;
- $121,000 to Passport 420; and
- $70,700 to GB Auto.

I have attached the spreadsheet search results for each corporate entity as **Exhibit 15** (A&A), **Exhibit 16** (Global), **Exhibit 17** (Passport 420) and **Exhibit 18** (GB Auto). The spreadsheets show (1) the date of each transaction in chronological order (newest to oldest); (2) the amount; (3) the bank statement's description of the entity that received the payment; and (4) the CBT bank account which made the payment (with only the last 4 digits per the Court's instructions).

13. Attached as **Exhibit 19** is a copy of excerpts of the Affidavit of Special Agent Remoun Karlous in support of a search warrant and arrest warrant of Mr. Avenatti. The entire criminal complaint and affidavit can be found at <u>United States of America v. Michael J. Avenatti</u>, Case Number SA19-2241M, Dkt. Nos. 1-4.

I declare under penalty of perjury under the laws of the United States of America that the foregoing this true and correct. Executed this 9th day of April 2019.

                                                    */s/ Jason M. Frank*
                                                    JASON M. FRANK