Scott H. Sims, State Bar No. 234148
Andrew D. Stolper, State Bar No. 205462
FRANK SIMS & STOLPER LLP
19800 MacArthur Boulevard, Suite 855
Irvine, California 92612
Telephone: (949) 201-2400
Facsimile: (949) 201-2401
astolper@lawfss.com
ssims@lawfss.com

Attorneys for Judgment Creditor
JASON FRANK LAW, PLC

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

In re

EAGAN AVENATTI, LLP,

　　　　　　　　Debtor.

Case No.  8:18-cv-01644-VAP-KES

The Hon. Karen E. Scott

**JUDGMENT CREDITOR JASON FRANK LAW, PLC'S RESPONSE TO MICHAEL AVENATTI'S OBJECTION AND MOTION TO QUASH SUBPOENA TO BIENART KATZMAN PC**

Date:　　　July 2, 2019
Time:　　　10:00 a.m.
Courtroom: 6D

-1-

OPPOSITION TO MOTION TO QUASH
BIENART SUBPOENA

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## OPPOSITION

For the reasons set forth in the Motion to Compel Compliance with the Subpoena to Bienert Katzman PC ("Bienert") (Doc. 76), which is incorporated by reference herewith, Judgment Creditor Jason Frank Law, PLC ("JFL") hereby opposes the Motion to Quash the Subpoena filed by Michael Avenatti ("Avenatti").

Avenatti does not cite a *single case* to support his arguments and objections to the subpoena.  Avenatti does not, and cannot, refute the established authority that a "client's Fifth Amendment privilege is not violated by enforcement of a subpoena directed towards his attorney." Beckler v. Sup. Ct., 568 F.2d 661, 662 (9th Cir. 1978) (citing Fisher v. U.S., 425 U.S. 391, 96 S.Ct. 1569, 1574 (1976).  Avenatti does not and cannot cite a single authority refuting the fact that "a retainer, the identity of the client, the conditions of employment and the amount of the fee and who paid it do not come within the privilege of attorney-client relationship." In re Michaelson, 511 F.2d 882, 888 (9th Cir. 1975).

Avenatti attempts to distinguish Michaelson on its facts, but this is a well-established principle of Ninth Circuit law.  See, e.g., In re Osterhoudt, 722 F.2d 591, 593 (9th Cir. 1983) ("Fee arrangements usually fall outside the scope of the privilege simply because such information ordinarily reveal no confidential professional communication between attorney and client, and not because such information may not be incriminating"); Cohen v. Trump, No. 13-CV-2519-GPC WVG, 2015 WL 3617124, at *2 (S.D. Cal. June 9, 2015) ("Generally the attorney-client privilege 'does not safeguard against the disclosure of either the identity of the fee-payer or the fee arrangement.'")  Simply put, Avenatti has not come forward with any evidence that the enforcement of this subpoena would reveal confidential and privileged communications, nor any case law that granted a motion to quash such a subpoena in these circumstances.

OPPOSITION TO MOTION TO QUASH
BIENART SUBPOENA

Avenatti also argues this subpoena exceeds the scope of permissible post-judgment discovery.  This is nonsense.  JFL is attempting to trace the location of the *millions* of dollars of fees that properly belong to Judgment Debtor Eagan Avenatti LLP ("EA").  Avenatti has been hiding EA's assets by playing "whack-a-mole" with bank accounts, setting up accounts under different names and at different banks, and then emptying the accounts once they are discovered.  The Court has already seen this evidence in numerous motions.  By tracing Avenatti's payments to his attorneys, JFL and the Receiver will be able to locate these funds.

For example, the Court will recall how Avenatti deposited hundreds of thousands of dollars of legal fees from EA's client Medline Industries, Inc. ("Medline") into a new account at City National Bank, under the name "Avenatti LLP."  (Doc. 70, 70-7).  Avenatti then used that money to pay his divorce attorney, Stegmeier Gelbart, among other personal expenses.  (Doc. 70-8).  A subpoena to the divorce attorney would have revealed the location of this account prior to JFL discovering it.  Unfortunately, by the time JFL discovered it, the money was already gone.

Avenatti is getting better at hiding his accounts by avoiding transfers between accounts (choosing instead to pay himself in cash and deposit it in another).  But the one thing he cannot avoid is that most criminal, divorce and defense attorneys are going to require payment for their services.  Finding the source of these funds is one of best ways of tracing EA's property, which is why Avenatti is fighting so hard to oppose the subpoenas and using the delay of motion practice to provide him time to cover his tracks.  Further, this discovery is necessary to determine whether JFL has fraudulent transfer claims against these attorneys (who appear to be knowingly collecting money from Avenatti when they are aware JFL has substantial judgment liens on EA and Avenatti's personal assets).

OPPOSITION TO MOTION TO QUASH
BIENART SUBPOENA

1    It should not be forgotten this type of discovery has become necessary because

2  Avenatti refused to comply with Court's orders to produce all of his bank accounts

3  and a list of all clients of EA and any other Avenatti affiliated entities, among other

4  information.  While it is encouraging that Avenatti may answer for any crimes he

5  committed, this is cold comfort to the victims from whom he has misappropriated

6  millions of dollars, *including* JFL.  Finding the money is paramount to righting

7  Avenatti's wrongs.

8    For the foregoing reasons, JFL requests the Court compel compliance with the

9  subpoena.

10

11  Dated:  June 11, 2019                         FRANK SIMS & STOLPER LLP

12

13                                    _____*/s/ Scott H. Sims*_____
                                        Scott H. Sims
14                                      Andrew D. Stolper
                                        Attorneys for Judgment Creditor,
15                                      JASON FRANK LAW, PLC

16

17

18

19

20

21

22

23

24

25

26

27

28

OPPOSITION TO MOTION TO QUASH
                                                     BIENART SUBPOENA